UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY HAIRSTON,                           CASE NO.: 3:13-cv-1457-J-32BT

    Plaintiff,

vs.

ED NELSON TRANSPORT,
a Foreign Profit Corporation and
ED NELSON, Individually,

    Defendants.
_____/

## RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING DR. TANNAHILL GLEN

    Plaintiff, ANTHONY HAIRSTON, by and through his undersigned attorney, responds to the Defendants' Motion for Protective Order and Amended Motion for Protective Order and says:

    1.    The real agenda behind Defendants' Motion for Protective Order is Dr. Tannahill Glen's unwillingness to be deposed by Ms. Sims. The reasons for such are specified below.

    2.    The Defense filed a Motion for Protective Order on Friday, May 29, 2015, with the Court alleging that its expert witness, Dr. Tannahill Glen, had signed

an affidavit supporting the subject Motion. This is false. See Exhibit "A". There is not, nor was there ever any such affidavit as represented by Defense.

3. Defendants filed an Amended Motion for Protective Order on Monday, June 1, 2015, which is also misleading as follows: The Motion states: "Defendants' counsel has conferred, in good faith, with Plaintiff's counsel in an effort to resolve this dispute without court action, in accordance with Rule 26, Federal Rules of Civil Procedure, and Local Rule 3.01(g); counsel have not agreed on the resolution of this Motion." See Exhibit "B".

4. This is false. Before filing the Motion, the undersigned never had any discussions with Defense regarding any computer limitations, internet, cell phone or time limitation requested in the Motion. See Exhibit "C".

5. The Motion also alleged "Ms. Sims claimed to a need to appear telephonically at Dr. Glen's deposition first representing to the defense counsel she was in Las (sic) Angeles and then, changing to she was simply at her home in Ocala, Florida." This is false. Ms. Sims never spoke to Defense counsel. Furthermore, Ms. Sims *was* in her home, which is in Los Angeles when the deposition was originally scheduled until it was unilaterally cancelled the morning of the deposition by the Defense. See Exhibit "A".

6. The Motion implies the parties do not agree that in this case Ms. Sims can attend the deposition live. This is false. She is now planning on attending live, and Defense has been advised of this. See Exhibit "C".

2

7.      The premise upon which the Defendants file their Motion appears to be that the undersigned and/or Ms. Sims herself will misrepresent the participants of the deposition even after acknowledging on the record as officers of the Court. This is false, offensive and there are no grounds to support this accusation. The Motion includes a portion of Ms. Sims website discussing the availability of her husband to attend depositions as a medical consultant. However, the website does not indicate that Dr. Hunter secretly attends such depositions because, in fact, he does not. See Exhibit "D" Furthermore, Dr. Hunter is not attending Dr. Glen's deposition and is, in fact, seeing patients in Ocala the date of Dr. Glen's deposition. See Exhibit "D".

8.      The Motion is misleading in that it alleges Ms. Sims plans on having a secret third party consultant listen in to and/or advise her during the deposition. This is absolutely false. No consultant or expert will attend the deposition whatsoever. See Exhibit "E". In fact, the undersigned, in addition to agreeing that both he and Ms. Sims would state on the record, as officers of the Court, that no such third party attended, also previously offered that a mutually agreed Special Master could attend the deposition, actually sit behind Ms. Sims, and continuously observe her computer, at the expense of the defense thus guaranteeing no consultations with third parties. See Exhibit "C". As of this date he has not agreed. Therefore, it is clear Defense does not actually believe Ms. Sims will actually

engage in such tactics. Instead, Defense is clearly attempting to limit how she can affectively depose an expert.

9. This Motion is filed even though Defense counsel has already had the opportunity to engage in multiple depositions with his cell phone, computer, internet, and without such time limitations. As such, it is unfair at this time to unilaterally impose such restrictions on the Plaintiff's counsel.

## SUMMARY OF THE FACTS

10. On September 11, 2014, the Court ordered Dr. Tannahill Glen to produce the raw data of the examination of the Plaintiff, copies of the specific pages of test materials, and test records.

11. On February 26, 2015, Dr. Tannahill Glen sent both Plaintiff's and Defense counsel a letter expressing her displeasure with having to produce documents in accordance with the Court's September 11, 2014 Order. This letter says it all. It clearly depicts the agenda of Dr. Tannahill Glen and sets forth the rationale behind Defense counsel's conduct and Motion. See Exhibit "F".

12. On May 27, 2015, the deposition of Defendants' expert witness, Dr. Tannahill Glen, was set.

13. The deposition was properly noticed and cleared by the Defense.

14. Late in the morning of the deposition, the undersigned was contacted by Defense counsel who insisted Ms. Sims, co-counsel, state on the record that no-one would be listening in to the deposition. The undersigned agreed

to the terms since Ms. Sims had no intention of having anyone else listen in to the deposition.

15. Thereafter, Defense counsel then changed his demand and insisted approximately one (1) hour before the deposition was scheduled to commence that Ms. Sims conduct the deposition in person, which they knew was impossible when Ms. Sims was in Los Angeles.

16. Since Ms. Sims was in Los Angeles at the time the undersigned offered to have a camera enabled on Ms. Sims' end to show no one else was in the room while the deposition was taking place.

17. This was rejected by Defense counsel, who then unilaterally cancelled the Plaintiff's scheduled deposition without filing any motion, in spite of discovery deadlines looming just a few weeks away.

18. That Friday, May 29, 2015, Defense filed its Motion for Protective Order with the Court, clearly claiming that they had attached the affidavit of Dr. Tannahill Glen in support of its Motion.

19. On Friday, May 29, 2015, Defense also served Plaintiff's counsel with a copy of its Motion for Protective Order. However, the Motion served on Plaintiff's counsel by Defense did not reference or attach Dr. Tannerhill Glen's affidavit. See Exhibit "G".

20. On Monday, June 1, 2015, undersigned counsel's staff contacted Defense counsel requesting a copy of the Motion with the attached affidavit.

21. On Monday, June 1, 2015, Defense Counsel's staff responded via email that there is no affidavit and informed Plaintiff's counsel's staff that an Amended Motion had been filed that day. See Exhibit "H".

22. On Monday, June 1, 2015, Defense filed its Amended Motion, which now seeks an Order precluding Plaintiff's counsel from accessing the internet, her phone, using her computer, further seeks to limit the deposition time to four (4) hours, and seeks an order compelling her to attend the deposition live.

## AS TO THE CLAIM PLAINTIFF'S COUNSEL WILL HAVE A SECRET CONSULTANT LISTINGING INTO THE DEPOSITION

23. Plaintiff's counsel has no intention of having anyone listen in during the deposition. If she were, her practice is to announce the individual in the beginning of the deposition. See Exhibit "E". Both Ms. Sims and the undersigned are more than willing to state on the record, as officers of the Court, that no-one else will be listening in to the deposition prior to the deposition and confirm on the record that, after the deposition, no one else listened into the deposition. The undersigned is also willing state on the record that he was with Ms. Sims during the deposition, monitored her computer, and will confirm that no third parties were listening in to the deposition.

24. The subject Motion basically alleges that two separate attorneys would engage in fraud upon the Court, secretly have a third consultant listen in to

6

a deposition, and then lie about the attendance. This is unsupported, completely unfounded, and offensive.

25. The Defense in his motion alleges that both Dr. Glen and Defense counsel have experienced Ms. Sims having medical consultants attend depositions without announcing their presence. Absolutely no specifics were provided in the motion, thus making it impossible to respond to such vague and outright misleading representations. The undersigned and Ms. Sims are unaware of such behavior because it is not true. It is not Ms. Sims' practice to have secret unannounced medical consultants listen in on depositions contrary to claims made by Defense. See Exhibit "E".

26. In a prior deposition in a different case involving both Dr. Glen and Ms. Sims, it was *Dr. Glen*, not Ms. Sims, who behaved inappropriately, so much so that lead counsel was forced to ask for assistance from the Court to compel Dr. Glen's compliance with discovery requests. See Exhibit "I". Furthermore, Dianne Weaver set forth in an affidavit that Dr. Glen's behavior during this deposition was inappropriate and Ms. Sims behavior was appropriate. See Exhibit "J".

27. The undersigned, as well as Mrs. Weaver, as set forth in her affidavit, have experience with Ms. Sims. Both would vouch that she is of the highest caliber and well respected by her peers as a lawyer with significant expertise in cross examining witnesses, especially neuropsychologists, having taught and

7

published extensively on the subject. That is precisely why Ms. Sims was retained in this case.

28. As an aside, the undersigned is unaware of any law precluding a consultant from assisting a lawyer in deposition whether live or remotely. Furthermore, the claim that this is the unauthorized practice of law is irrelevant, since no such consultant witness will attend in this case. However, it is also incorrect. Experts assist lawyers all the time in helping them prepare for questions for cross examination. As such, the undersigned has no objection to a non-testifying expert listening in on behalf of the *Defense*.

## MEMORANDUM OF LAW

### I. DEFENDANTS FAILED TO DISCUSS THE ISSUES IN GOOD FAITH

29. Rule 26(c)(1), of the Federal Rules of Civil Procedure, requires a party to certify to the Court that there was a good faith discussion of the issues in order to avoid court action. In addition, Local Rule 3.01(g), requires a similar discussion and certification. Failure to engage in a good faith discussion prior to filing justifies the denial of a motion.[1]

---

[1] *Trinos v. Quality Staffing Services Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008). Defense counsel relies on *Trinos* to argue that a telephonic appearance is not warranted because the burden and expense of travel does not outweigh the prejudice to the defendant. However, this is not an accurate application of the law. In *Trinos*, the Court denied Plaintiffs' motion of deposition by remote means not because the burden of travel and expense did not warrant a telephonic appearance but because Plaintiffs failed to provide any affidavits or evidence to

8

30.     Defendants claim there was a conference where counsel was unable to agree. Key issues raised in Defendants' memorandum, including objection to the use of computer, laptop and cell phone, as well as limitations on the time involved, were never discussed with the undersigned. The only issues in the motion discussed with the undersigned were the demands that Ms. Sims attend the deposition live and that Ms. Sims and the undersigned attest that no third party attend the deposition, to which the undersigned agreed. As a result, the Motion fails to comply with the Federal Rules of Civil Procedure and the local rules. Defendants' failure to comply with the rules warrants denial of their motion and as such should be denied.

## II. DEFENDANTS LACK THE REQUIRED SPECIFIC FACTS FOR A PROTECTIVE ORDER

31.     Defendants seek a protective order under Rule 26(c)(1), to prohibit Ms. Sims from having access to a telephone, laptop, or the internet. Defendants base this request upon the fear of improper observation and feeding of potential questions. However, a party seeking a protective order "must make a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm which

---

support their claims that the proposed deposition would constitute a burden. *Id.* at 699.

will be suffered without one."[2] There must be a particular need for a protective order.[3] The party seeking a protective order must show a specific and significant harm that will result if a protective order is not granted.[4]

32. Defendants' evidence consists of a section of a website taken out of context, Defendants' quote "evidence", along with vague and unsupported allegations of "past experiences." Defendants fail to list the dates of the alleged improper behavior, the depositions in which they occurred, or the names of the cases. Defendants fail to specify the inappropriate behavior they claim occurred at these prior unspecified depositions. Defendants fail to substantiate their allegation that prior depositions involving them or their attorneys' hired experts have occurred with unidentified witnesses listening in to the deposition. Defendants also fail to specify the misconduct alleged in the Motion.[5]

33. Defendants fail to show how they will be harmed if Ms. Sims is allowed access to a laptop or the internet. Defendants fail to show the harm they will suffer if Ms. Sims is allowed access to her cell phone during the deposition or

---

[2] *New World Network Ltd. v. M/V Norweigan Sea*, 05-22916-cv (S.D.Fla. April 6, 2007).
[3] *Trinos*, 250 F.R.D. at 698.
[4] *Id.*
[5] This is ironic as Dr. Glen's misconduct in a prior case was so egregious prior counsel was required to request court assistance for compliance with discovery requests. See Exhibit "E" Motion to Limit Expert Testimony Elizabeth Tannahill Glen's Testimony in *Solomon v TK Power, Inc.* and affidavit from Dianne Weaver setting forth Dr. Glen's inappropriate behavior and Ms. Sims' appropriate behavior during the deposition. See Exhibit "F".

during breaks. Defendants fail to identify the specific harm that will be prevented by shortening the deposition to four hours.

### III. DEFENDANTS REQUESTED RESTRICTIONS WILL PREJUDICE PLAINTIFF

34. A protective order under Rule 26(c)(1), must balance each party's interests in accessing and protecting information.[6] Even if there is good cause for a protective order, the Court must weigh it against the risk of prejudice and the importance of the discovery at issue.[7]

35. Ms. Sims will be substantially prejudiced by an order barring her from bringing her laptop to the deposition. Ms. Sims will need to access a file consisting of thousands of pages during the deposition. The manuals and raw data produced by Dr. Tannahill Glen are nearly 700 pages. Barring the use of a laptop would require Ms. Sims to manually search through a substantial amount of documents in order to find a quote or source. Barring the use of a laptop would also require preclude her from accessing thousands of pages of documents she has acquired over the course of her career. Defendants have no justification for forcing Ms. Sims to take extra time to manually thumb through documents, which can be brought up in PDF format and permit instant word searching. This is especially outrageous because Defense is seeking to restrict a time-saving method employed by Ms. Sims, while simultaneously seeking to reduce the amount of time allowed

---

[6] *See Farnsworth v. Proctor & Gamble*, 758 F.2d 1545, 1547 (11th Cir. 1985).
[7] *See New World Network*, citing *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997).

11

for Dr. Tannahill Glen's deposition. Ms. Sims will also be prejudiced because she can more effectively type her notes during the deposition than write them longhand. Defendants have no right to require an attorney conducting a deposition take notes by his or her preferred method.

36. Furthermore, her need for internet access to verify or explore claims made by the witness is crucial to her cross-examination. This is crucial to her ability to verify claims made by the Defense expert or obtain articles referenced in deposition such that the witness can be cross-examined on them. The Plaintiff only has one chance to depose this crucial expert, and if she makes a claim, cites an article, a book or a position, the only time to cross examine her on the specifics of that claim is during the deposition. If there is information available on medical websites such as Google Scholar, Google Books or Pub Med, which may assist in the research and discovery as to the basis of these claims, it is unfair and prejudicial to preclude the plaintiff from using those resources. This is especially true since the Defense has participated in depositions in this case without such limitations.

37. The Defense has attended and taken depositions wherein he has had no such limitation. To date, a number of depositions have been taken wherein Defense counsel has had no such restrictions including the deposition of Dr. Manuel, Dr. Rogozinzki, David Dorrity, Dr. Maalouli, Dr. Doward, Dr. Roberts, and Ms. Marchand, to name a few.

38. The undersigned and Ms. Sims have no problem agreeing her cell phone will not be used during the deposition. In fact, they will be happy to place the cell phone in off position and leave it in full view of those attending. The undersigned would also request the same limitations be placed upon the defense and his witness.

## IV. THE COURT HAS THE DISCRETION TO CREATE A LESS RESTRICTIVE PROTECTIVE ORDER

39. The Court can enter a protective order balancing Defendants' concerns about the sensitivity of the material in the deposition with Plaintiff's interest in efficiently and effectively deposing Defendants' expert. The Court can order the undersigned and Ms. Sims as officers of the Court to state on the record as officers of the Court that there were no unauthorized people listening in on the deposition. The undersigned will also monitor Ms. Sims during the deposition and confirm there were no observers. Defendant's Motion has made no allegation that the undersigned is dishonest or unreliable. As such, the undersigned offers this very real and reasonable alternative to the unreasonable demands made by the Defense.

## V. DEFENDANTS FAIL TO SHOW GOOD CAUSE TO SHORTEN THE DEPOSITION

40. Under Rule 30(d)(1), the default length of a deposition is seven (7) hours. The length of the deposition may be changed by stipulation or by Court

order.[8] The Court must additional time if necessary to fairly examine the deponent.[9] The party who wants to extend or alter the length of the deposition must show good cause.[10]

41. Defendants claim the case is too simple to require the full seven (7) hours. This case is far more complex than Defendants assert. Dr. Glen's discovery responses comprise more than six hundred pages. Plaintiff and Ms. Sims are entitled to the entire seven (7) hours in order to fully cross-examine Dr. Glen

42. Defendants also claim the full length of the deposition would only serve to "harass" Dr. Glen. Dr. Glen is being paid for the full length of the deposition and holds herself out as an expert. She accepted employment as a professional witness well knowing that her testimony would require lengthy and vigorous cross-examination. Defendants have no evidence that a seven (7) hour deposition, when compared to a four (4) hour deposition, would subject Dr. Glen to "annoyance, embarrassment, oppression, or undue burden or expense."[11] Defense is seeking to restrict access to its expert on what it claims Plaintiff might do in a deposition. If, in fact, this behavior occurs then the Defense can make this Court aware at that time and seek appropriate remedies.

---

[8] *Id.*
[9] *Id.*
[10] Fed. R. Civ. P. 30(d) Advisory Committee note (2000 Amend.).
[11] *See* F. R. Civ. P. 26(c)(1).

## CONCULSION

As evidenced in Dr. Tannahill Glen's February 26, 2015 correspondence, this is nothing more than a witness attempting to limit the ability of a Plaintiff's lawyer to successfully engage in cross-examination using those tools frequently utilized by both Plaintiff and Defense attorneys on a daily basis. It is untimely, misleading, and unfair to require one party to be so limited while opposing counsel has had unfettered abilities to engage in discovery without such limitations. Furthermore, the *minutiae* with which the Defense seeks to control the discovery is not warranted or supported by case law. Moreover, Defense's unfounded attacks on the ethics of the undersigned, as well as Ms. Sims, are not supported by facts or case law. Defense counsel might as well demand what color ink the undersigned uses when taking notes, demand the undersigned cannot use the internet to access Lexis or Westlaw during a hearing and invent other time limits that do not exist in Federal law.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court to deny Defendants' Amended Motion for Protective Order.

**LAW OFFICES OF ERIC S. BLOCK, P.A.**

*/s/ Eric S. Block*

**ERIC S. BLOCK**
Florida Bar No.: 0915531
**FRAZ AHMED**
Florida Bar No.: 0025653
6817 Southpoint Parkway, Ste. 2502
Jacksonville, Florida 32216
TEL.: (904) 475-9400
FAX: (904) 475-9411
Attorneys for Plaintiff
Primary email: eservice@ericblocklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via electronic delivery to **Ellis T. Fernandez, III, Esquire,** et@fernandeztl.com; emy@fernandeztl.com; Pleadings@Fernandeztl.com and **Sorena Fallin, Esquire,** Pleadings@Fernandeztl.com; Sorena@Fernandeztl.com at 8780 Perimeter Park Court, Bldg 200, Jacksonville, FL 32216, Counsel for Defendants; and **Christopher Johns, Esquire, Zachary Von Roenn, Esquire,** Johns & Von Roenn, 4901 Atlantic Blvd., Jacksonville, FL 32207, zvonroenn@chrisjohnslaw.com, cjjaxlaw@yahoo.com; Counsel for Plaintiff, for this 4th day of June, 2015.

*/s/*

Attorney