## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

**Plaintiff,**

vs.

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

**Defendants.**

_____/

## DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER
## REGARDING DEPOSITION OF TARA MARCHAND

**COME NOW** the Defendants, **ED NELSON TRANSPORT** and **ED NELSON,**

by and through undersigned counsel, and respectively request from this Honorable Court

for the entry of a Protective Order in accordance with Federal Rule of Civil Procedure

26(c)(1), and for an Order requiring the deposition of Tara Marchand scheduled for

Thursday, June 10, 2015 at 3:30 p.m. to be conducted in accordance with the Court's

Order, dated June 5, 2015, which requires the Plaintiff's newly designated "limited" co-

counsel, Dorothy Clay Sims, to appear in person for the deposition of Tara Marchand,

without any undisclosed consultation, advice, instruction or questions while the

deposition is being conducted, and only allowing Co-Counsel to have access to a

computer, as well as the internet, during the deposition for any purpose other than

communicating with third parties, and as grounds in support thereof hereby submit the

following:

## SUMMARY OF THE ARGUMENT

As the Court has been informed in Defendants' Amended Motion for Protective Order regarding the Deposition of Dr. Tannahill Glen, Ms. Sims is very well known to, and in fact, boasts on her own website, how she regularly has other individuals on a cell phone or participating in the deposition process through her computer while the deposition is ongoing. (Please see Exhibit "A," printout of "About Us" section of website, "Law Offices of Dorothy Clay Sims, PA," also available at http://dorothyclaysims.com/background/ (accessed May 29, 2015)).  For the same reasons and concerns as previously outlined in Defendants' prior Amended Motion for Protective Order (*see* Doc. #63), Defendants request that the continued deposition of Tara Marchand, a therapist who performed Functional Capacity Evaluations on the Plaintiff, be conducted in accordance with the Court's previous Order, dated June 5, 2015.  (Please see Exhibit "B", Order dated June 5, 2015 *see* Doc. # 67).   While Plaintiff's counsel indicates she will appear in person, there is a concern Ms. Sims will not comply with the remaining guidelines as indicated in the Court's Order.   Specifically, Defendants are concerned Co-Counsel for the Plaintiff will be on her computer or cellular phone conferring with third parties to assist in her examination of Mrs. Marchand.

## FACTS

The continued deposition of Tara Marchand was scheduled for June 10, 2015 at 9:15 a.m.  On June 8, 2015, Defense Counsel confirmed, via email, to Plaintiff's counsel that Ms. Sims would be present in person for the deposition of Mrs. Marchand. Plaintiff's counsel responded that he understood Mrs. Marchard is not our retained expert

(which was another issue addressed in Defense Counsel's email), and he would check with his Co-Counsels regarding "Dr. Glenn's appearance" but would imagine it would be in accordance with Judge's order". (Please see Exhibit "C" email correspondence between Counsel for the parties dated June 8, 2015). Despite counsel's presumed typographically error, it was clear the parties were discussing the deposition of Mrs. Marchand and whether Ms. Sims would appear in person with the same guidelines as outlined in the Court's Order. After receipt of the Plaintiff's notice for deposition for June 10, which did not indicate it would be a telephonic deposition, Defense Counsel appeared expecting Ms. Sims to be in person. (Please see Exhibit "D", Plaintiff's Notice of Taking Continued Deposition Duces Tecum to Tara Marchand). However, Ms. Sims was not in person and was appearing by telephone. Plaintiff's counsel indicated that she believed they had filed an amended telephonic notice. However, a telephonic notice was never filed nor served.

Defense Counsel presented her objection to the improperly noticed deposition and the previous email, which Plaintiff's counsel did not refute, Ms. Sims' would be in compliance with the Court's prior Order. Further, Defense Counsel noted they did not stipulate to Ms. Sims' telephonic appearance. Mrs. Marchand's deposition was subsequently cancelled. Defense counsel did contact the Court to address the issue but Counsel for the Plaintiff subsequently agreed to move the deposition to June 11, 2015. Counsel for the parties placed their objections on the record. (Please see Exhibit "E", Transcript of Tara Marchand's deposition dated June 10, 2015).

In order to prevent any further issues related to Ms. Sims appearing at the continued deposition of Mrs. Marchand and in accordance with the Order, Defense

counsel communicated via email with Plaintiff's counsel to confirm the Order regarding Ms. Sims appearing in person applied to Mrs. Marchand's deposition.  Defense counsel also requested that if they did not agree to same to notify Defendants immediately so that a protective order could be filed.  (Please see Exhibit "F", Correspondence to Plaintiff's Counsel dated June 10, 2015.)   Plaintiff's counsel responded it was their understanding the Order on Defendant's Motion for Protective Order requiring Ms. Sims to appear in person applies only to the deposition of Dr. Glen.  However, they indicated she would appear in person.  (Please see Exhibit "F" Correspondence from Plaintiff's Counsel dated June 10, 2015.)  However, based on their email, there is an indication or implication Plaintiff's counsel does not plan on honoring the Court's Order as to limit Ms. Sims' computer and internet access during the deposition for any purpose other than communicating with third parties.

Therefore, Defense Counsel seeks an Order from the Court requiring the deposition of Tara Marchand to continue in accordance with the Court's prior Order dated June 5, 2015.

### ARGUMENT AND MEMORANDUM OF LAW

Federal Rule of Civil Procedure 30 provides, in relevant part, "The parties may stipulate--or the court may on motion order--that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4).

Concerns related to telephonic depositions include the inability to observe any improper coaching taking place or other improper behavior.  See Dieng v. Hilton Grand Vacations Co., LLC, 2011 WL 812165, at *2 (D.Nev. Mar. 1, 2011); Johnese v. Jani-King, Inc., 2008 WL 631237, at *1 (N.D. Tex. Mar. 3, 2008).  These concerns should be

extended to the attorneys conducting the deposition, in addition to the more often encountered improper coaching of witnesses.

Additionally, Rule 10 of the Rules Regulating the Florida Bar prohibits unlicensed individuals to practice law in this state. Florida FL ST BAR Rule 10-2.1; see Model R. Prof. Conduct Rule 5.5(a) (ABA 2013) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so").

Telephonic appearance is not warranted in this circumstance, as Ms. Sims has indicated her willingness to appear in person. Nor would it be a burden for Ms. Sims to travel to Jacksonville to attend Mrs. Marchand's deposition in person, as Ms. Sims will already be present for the deposition of Dr. Glen, which is scheduled to take place immediately prior to the deposition of Mrs. Marchand. Only special circumstances, such as financial hardship or some other burden that outweighs any prejudice to the defendant, may necessitate that a deposition be taken outside the forum or by other means. See Trinos v. Quality Staffing Servs. Corp., 250 F.R.D. 696, 700 (S.D. Fla. 2008) (denying plaintiff's motion for depositions by remote means because plaintiff failed to show undue burden and expense for travel to depositions, notwithstanding counsel's assertion that his law firm was small and travel to depositions would essentially shut down his office for more than two weeks). No such special circumstances are present in this case. The only reason Ms. Sims would need to appear telephonically would be to hide the individuals helping, or actually conducting, the deposition. Moreover, as Ms. Sims holds herself out as an expert who specializes in conducting these types of depositions, she should not

need the assistance of undisclosed individuals, who are not authorized to practice law before this Court.

For the reasons cited above, Defendants request that Plaintiff's Co-Counsel, Ms. Sims, appear in person, which we understand she has agreed to do so, and be limited to the Order of June 5, 2015 in which she be prohibits Ms. Sims from using her cellular phone and her computer or internet to communicate with third parties.

Defendants' counsel certifies that she has conferred, in good faith, with Plaintiff's counsel in an effort to resolve this dispute without court action, in accordance with Rule 26, Federal Rules of Civil Procedure, and Local Rule 3.01(g); counsel have not agreed on the resolution of this Motion.

**WHEREFORE**, the Defendants respectively request that this Honorable Court enter an Emergency Protective Order, in accordance with Federal Rule of Civil Procedure 26(b)(2)(C), as previously outlined in the Court's Order dated June 5, 2015, pursuant to Defendants' Amended Motion for Protective Regarding Deposition of Dr. Tannahill Glen.  Specifically, Defendants request the Plaintiff's co-counsel, Dorothy Clay Sims, be prohibited from appearing telephonically at the deposition of Tara Marchand, and request that Ms. Sims be prohibited from use of a telephone or cellular phone, and be prohibited from the use of the computer of internet for any other purpose than communicating with the third parties.

*(Certificate of Service Follows on Next Page)*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Electronic Mail to Chris Johns, Esq. and Zachary Von Roenn, Esq. via zvonroenn@chrisjohnslaw.com; epleading@chrisjohnslaw.com and Eric S. Block, Esq. and Fraz Ahmed, Esq. via eservice@ericblocklaw.com, on this 10th day of June, 2015.

**FERNANDEZ TRIAL LAWYERS, P.A.**

*/s/ Sorena S. Fallin* _____
**E.T. FERNANDEZ, III, ESQUIRE**
Florida Bar No. 371556
**SORENA S. FALLIN, ESQUIRE**
Florida Bar No. 019102
8780-200 Perimeter Park Court
Jacksonville, Florida  32216
(904) 398-8008 (Phone)
(904) 398-0332 (Fax)
Attorneys for Defendants

*The following e-mail addresses are only for e-mail service pursuant to Fla. R. Civ. Pro. 1.080:*
Primary: Pleadings@Fernandeztl.com
Secondary: Sorena@Fernandeztl.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

        **Plaintiff,**

  **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

        **Defendants.**

_____/

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**
**REGARDING DEPOSITION OF TARA MARCHAND**

**EXHIBIT "A"**
DOROTHY SIMS WEBSITE "ABOUT US"



# Law Offices of Dorothy Clay Sims, PA

"It is difficult to get a man to understand something when his salary depends on his not understanding it." ~ *Upton Sinclair*

## About Us

Dorothy Sims and her team combine decades of experience in medical, legal, and research fields.

On a daily basis, Dorothy consults with attorneys throughout the U.S., to provide methods of expert testimony cross-examination. Using her research team and analysis of reports (medical and legal), she prepares a strategy suggesting questions on various topics. If an attorney requests, Dorothy can depose experts herself. For more information about her consulting, visit the Consultations page .

Dorothy's practice includes numerous other projects and philanthropic work. She is frequently invited to in-house seminars for lawyers and law firms on researching and cross-examining. She has given over 350 speeches internationally on medical/legal issues throughout the world and is often invited as the state keynote speaker. She has spoken in almost every state in the United States including Hawaii and Alaska. She has also been a featured speaker in Paris, France, Jaipur, India, and twice in Kyoto, Japan.

She has authored chapters in books with individuals such as David Ball and Don Keenan as well as Dr. Michael Freeman. Dorothy donates a percentage of her book profits various organizations including the American Association for Justice and the International Federation for Human Rights. Her book, "Exposing Deceptive Defense Doctors " was a best seller for 3 years in a row and went into reprint status soon after publication, unheard of in the industry. She has also authored two children's books for parents who are injured. The books are available for free upon request. She has also authored articles in national publications to include the *Champion Magazine*, *Trial Magazine* (The American Association for Justice Journal), and *Brain Injury Professional*.

## About Dr. Hunter



Dr. Oregon Hunter, M.D.

Dorothy's most recent addition to her team is Dr. Oregon K. Hunter, MD -- a medical doctor licensed in Florida – who currently works on cases with Dorothy and other lawyers to determine if misrepresentations are made about the science. He is available to listen in on depositions and provide questions to lead counsel. He also remotes in for mediations to explain medical issues to the defense in support of the plaintiff's case. He watches videotapes of defense exams and provides an analysis for lead counsel explaining what the other side's expert misrepresented. .* For an example of an evaluation of a case conducted by Dr. Hunter in which the expert's exam was videotaped contact us here.

Dr. Hunter is board certified in Physical Medicine and Rehabilitation and practiced medicine in Hawaii, California and Florida. He joined Dorothy's team in 2015 and is an invaluable asset in reviewing cases.

*Dr. Hunter is also available to attend mediations by video and explain weaknesses in defense's position. Attorneys Evan Lubell (elubell@floridalegalrights.com) and Dan Ramsfeld (dan@ramsdelllaw.com) can be contacted as references for Dr. Hunter's recent participation in their case.*

## About Dorothy Sims

Dorothy received both her undergraduate and law degree from the University of Florida; and studied international law at Oxford University. She is licensed in the state of Florida, US District Court – Northern District of Florida, US District Court and the Middle District of Florida. She has also cross examined experts in many states throughout the US.

Dorothy initially represented miners in Kentucky who were denied black lung benefits. Going down into the bowels of a mine in Eastern Kentucky, she felt vibrations as the miners "shot coal" (exploded portions of the face to loosen the coal). Despite wearing a mask, her trip left her coughing and sneezing coal dust for days; leading to a newfound respect for the dreaded pneumoconiosis suffered by miners who had spent decades in the mines.



Dorothy with Kentucky coal miners.

After representing coalminers, Dorothy began representing workers who were injured and denied medical care. She co-founded the Florida Workers' Advocates – the state's first watchdog over the insurance industry devoted to serving injured – and eventually served as president.

For over a decade, Sims volunteered time to lobby on behalf of the injured and was the first woman to be elected Chair of the Florida Bar Worker's Compensation Section in its 22-year history. She also served as President of the Marion County Bar Association.

While practicing law, she began to notice an alarming pattern. Forensic experts hired by the other side were reaching conclusions by (1) misrepresenting the science (2) ignoring the science (3) misrepresenting the facts and/or their examination and/or (4) testifying beyond their own training and education.

### Dorothy's Upbringing, Family and Inspirations

Dorothy Sims grew up in Owensboro, Kentucky, where her mother worked for Head Start while her father worked for the phone company. She moved to Florida while in high school. Her mother, who struggled with alcoholism and who joined AA, received her 10 year chip of sobriety before her death.



Dorothy and her grandfather.

Her grandfather, the Kentucky-based John Y. Brown, Sr. and well known trial lawyer, loomed large and was a powerful influence in Dorothy's childhood. Growing up listening to his stories about the poor victims he represented, Dorothy learned how he took on unpopular cases – representing miners – during strikes against potent mining companies.

The 1950's and '60's were dangerous times and her grandfather put his own life in danger repeatedly on behalf of his clients, poor miners who had no voice. During one trial a deputy hit Brown on the head with a shotgun and knocked him unconscious. His silence was brief however. Brown went on to become a member of the House of Representatives for nearly three decades. There he served as Speaker and as majority floor leader. Dorothy's grandfather also sponsored the state's first Civil Rights legislation, in spite of death threats to himself and his family.

Her uncle, John Y Brown, Jr., was the former Governor of Kentucky and her cousin, Pamela Brown is a justice correspondent for CNN. Her brother, the former Prosecutor and Judge, Benham J. Sims , is also a lawyer and practices in Kentucky. Her sister in law, Debbie Deweese is a Judge in Louisville.

Dorothy's motivation and inspiration to fight for those with a disability is largely influenced by her younger brother, who suffered from Down syndrome. She saw how he was treated by strangers, sometimes with pity, sometimes with cruelty. Dorothy's decision to working with the injured and disabled, who often have no voice when pitted against powerful people/organizations, is well founded and no coincidence.



John Y. Brown, Sr meets with Lyndon B. Johnson (36th President of the U.S.)



Dorothy's younger brother.



Dorothy and her younger brother.

Dorothy in the News

Dorothy's work is well documented in journals, newspapers, television and even radio such as:
– The Wall Street Journal,
-On the Record, with Greta Van Susteron (Fox)
– The Piers Morgan Shown (CNN)
–- In Session (CNN)
– The Voice of America
Business 2.0,
– Champion Magazine,
– Ocala Star Banner
– Lawyers, USA
– Chicago Daily Law Bulletin



Dorothy being interviewed in Los Angeles for a documentary by director Tom Jennings.

## The Casey Anthony Trial



"She was…serious and committed…with these qualities she had already established a wide network of researchers to assist her and she brought substantial computer skills to boot." – *quoted in "Justice in America," by J. Cheney Mason*

"Dorothy was relentless…" – *quoted in "Justice in America," by J. Cheney Mason*

"At this point Dorothy, our secret weapon, took over. Dorothy set up her research team at the Quality Inn that resembled Gene Hackman's team-all those people doing research" – *quoted in The Runaway Jury*.

"She is the ultimate giver. Dorothy did a great deal behind the scenes helping me prepare and making sure we had all the information we wanted on the experts and on the jury. When it came to work, she was a machine…" – *quoted in The Runaway Jury*.



**Her role in the Casey Anthony case:**

After delivering a speech to attorneys in Orlando, Sims was approached by attorneys Jose Baez and Cheney Mason and asked to join the Casey Anthony defense team. Dorothy, who has not had a television for decades, was unaware of the controversy surrounding the young woman.

After learning additional facts that were either left out, unknown to or ignored by the press, she decided to join the team. She never billed nor and she never received compensation for her many hours in the case. She eventually headed the forensic team and was responsible for researching backgrounds of expert witnesses retained by the prosecution and preparing for and, in some cases, cross examining the witnesses.

As a result of Dorothy's volunteering in the case she was threatened, bullied and, one day during the trial was even advised she would get a bullet to the head by nightfall. She has no intentions of writing a book about the case.

After the trial she continued to volunteer and does so to this day for persons with no finances, those wrongfully prosecuted who typically without means. She does so behind the scenes and on a national basis.

Dorothy typically devotes one day per week to working on cases Pro Bono. If you are a lawyer who believes your client has been abused by an expert, and are on a tight budget, contact Dorothy here. Please send a concise email explaining your case.

## Dorothy Volunteering

Volunteering is a part of Dorothy's practice. She routinely feeds the homeless in Ocala, New York, Los Angeles and Paris; and volunteers in a medical clinic in a rural city in western Mexico. She also volunteers in a medical clinic in Nevada and worked with doctors in India to provide free medications. Travels took her to the Amazon Jungle where Sims saw firsthand destruction of the jungle by corporations who displaced the native Shuar Indians. She also trekked medications to the Kathmandu region in Nepal.



Discussing the effects mental illness with actor William Macey.



Dorothy and Oregon feeding homeless in NY.



Dorothy at medical camp.



Dorothy discussing volunteer work with actor Amy Brennemen.



Dorothy flying to DC.



Dorothy in Nepal.



Dorothy in Nepalese orphanage.



Dorothy in the Amazon.



Meeting with the president of
NOW to discuss psychological
tests that are harmful to men
and women.



Volunteering in a rural clinic in
western Mexico.

"First they ignore you, then they ridicule you, then they fight you, then you win."
– Mohandas Karamchand Gandhi

**Attorney Log In**

You are not logged in.

Username


Password


[Log In]                              Forgot?  Register


## Registration

First you must Register and we will send you your username and password to access the site.


Home

About Us

Consultations

Seminars


Contact Me

FAQs

Links/Resources

Publications


### Dorothy Clay Sims, Esq.

118 W Fort King Street

Ocala, FL 34471

352-629-0480


The hiring of a lawyer is an important decision that should not be based solely upon advertisements. You should consult a Florida attorney for individual advice regarding your own situation. Before you decide, ask us to send you free written information about our qualifications and experience. The information you obtain at this site is not, nor is it intended to be, legal advice.

©2015 Dorothy Clay Sims, Esq.

Website Design and Hosting by PC House Productions

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

         **Plaintiff,**

  **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

        **Defendants.**

_____/

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**
**REGARDING DEPOSITION OF TARA MARCHAND**

**EXHIBIT "B"**
Court Order, dated June 5, 2015

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY HAIRSTON,

       Plaintiff,

v.                                                            CASE NO. 3:13-cv-1457-J-32JBT

ED NELSON TRANSPORT,
a Foreign Profit Corporation
and ED NELSON, Individually,

       Defendants.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendants' Amended Motion for Protective Order Regarding Deposition of Dr. Tannahill Glen ("Motion for Protective Order") (Doc. 63) and Plaintiff's Response thereto (Doc. 65), and Plaintiff's Motion to Compel Defense Expert Dr. Tannahill Glen to Attend Deposition ("Motion to Compel") (Doc. 66).  For the reasons set forth herein, the Motion for Protective Order is due to be **GRANTED in part** and **DENIED in part**, and the Motion to Compel is due to be **TAKEN UNDER ADVISEMENT**.

**I.      Admonition to Attorneys**

Because the Motion for Protective Order will be granted in part and denied in part, expenses will not be awarded to either side.  However, it appears that the attorneys are not adequately conferring or otherwise cooperating during discovery as required.  In fact, it appears that both motions might have been unnecessary had

the parties adequately conferred and cooperated regarding the subject issues.[1]

Therefore, the attorneys are hereby reminded of their duty to cooperate during

discovery, and to attempt to resolve all discovery disputes without Court intervention.

*See S.L. Sakansky & Assocs., Inc. v. Allied Am. Adjusting Co. of Fla., LLC.*, Case

No. 3:05-cv-708-J-32MCR, 2007 WL 2010860, at *1 (M.D. Fla. July 6, 2007)

("Discovery is intended to operate with minimal judicial supervision" and "should be

practiced with a spirit of cooperation and civility.").  The parties are also reminded

(and warned) of the Court's general obligation (and willingness) to award expenses

to the prevailing party on discovery motions, unless an exception applies.  *See* Fed.

R. Civ. P. 37(a)(5).

## II.    Motion for Protective Order

Defendants seek a protective order pursuant to Federal Rule of Civil

Procedure 26(c)(1) which prohibits Dorothy Clay Sims, Esq. from appearing

telephonically at the deposition of Defendants' expert, Dr. Tannahill Glen, and from

using her cell phone or computer during the deposition.  (Doc. 63 at 5.)  Defendants

argue this is necessary to prevent Ms. Sims from communicating with third parties

during the deposition.  (*Id.* at 1–5.)  Defendants also seek to limit Dr. Glen's

---

[1] For example, it appears that Defendants' Motion for Protective Order was filed prematurely and without adequate conferral because Plaintiff actually agrees to much of the relief sought.  The same is true for Plaintiff's Motion to Compel because Plaintiff does not yet know whether Defendants intend to produce Dr. Glen for the currently scheduled deposition, particularly once the Motion for Protective Order is decided.  Moreover, Plaintiff's 16-page Response to the 6-page Motion for Protective Order is excessive and largely unnecessary because he does not oppose much of the relief.

2

deposition to four hours.  (*Id.* at 5.)

Plaintiff agrees that Ms. Sims will attend the subject deposition in person. (Doc. 65 at 2.)  Additionally, Plaintiff agrees that Ms. Sims will not communicate with or allow any third parties to listen in during the deposition.  (*Id.* at 6.)  Plaintiff also agrees that Ms. Sims will not use her cell phone during the deposition.[2]  (*Id.* at 13.) However, Plaintiff argues that Ms. Sims should be permitted to use her computer and access the internet for purposes other than communicating with third parties, and that Dr. Glen's deposition should not be limited to four hours.  (*Id.* at 11–14.)

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). However, "[t]he party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Dunford v. Rolly Marine Serv. Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005).

It appears that Defendants seek to prohibit Ms. Sims from using a computer and/or the internet during the subject deposition only to ensure that she does not communicate with third parties.  (*See* Doc. 63.)  However, Plaintiff agrees that Ms.

---

[2] Plaintiff requests that "the same limitations be placed upon the defense and his witness."  (Doc. 65 at 13.)  This request for affirmative relief in the Response is inappropriate and will be denied.

3

Sims will not communicate with third parties during the deposition.  (Doc. 65 at 6.)

Therefore, Defendants have failed to show good cause for a protective order

prohibiting Ms. Sims from accessing a computer, as well as the internet, for other

purposes.

Additionally, Defendants have failed to show good cause to limit the deposition

to four hours.  In their two-sentence request, Defendants state that the case is not

"overly complicated" and that a deposition of more than four hours would "only serve

to harass Dr. Glen."  (Doc. 63 at 5.)  In support of these conclusory statements,

Defendants rely on their argument that Ms. Sims' alleged communication with third

parties during depositions is improper.  (*See id.*)  However, because Ms. Sims will

not communicate with third parties during Dr. Glen's deposition, Defendants have

not shown good cause for a protective order limiting the deposition to four hours.

### III.    Motion to Compel

In the Motion to Compel, Plaintiff requests that the Court order Dr. Glen to

attend the currently scheduled deposition, bring all materials specified in the notice

thereof, and remain available until the deposition is concluded.  (Doc. 66 at 6.)

Defendants apparently oppose the Motion to Compel, but, except for the length of

the deposition, it is unclear on what grounds or why.  (*Id.* at 4.)  In light of the Court's

ruling on the Motion for Protective Order herein, the Court expects Defendants to

produce Dr. Glen for the currently scheduled deposition and comply with all relevant

rules and procedures.  On or before June 8, 2015, Defendants shall respond to the

Motion to Compel or file a notice stating that they do not object to the relief requested in this motion.

Accordingly, it is **ORDERED**:

1.      The Motion for Protective Order (**Doc. 63**) is **GRANTED** to the extent that Ms. Sims shall attend Dr. Glen's deposition in person, shall not access her cell phone during the deposition, and shall not communicate with or allow any third parties to listen in during the deposition.

2.      The Motion for Protective Order (**Doc. 63**) is **DENIED** to the extent that Ms. Sims may access a computer, as well as the internet, during the deposition for any purpose other than communicating with third parties.    Additionally, the deposition is not limited to four hours.

3.      The Motion to Compel (**Doc. 66**) is **TAKEN UNDER ADVISEMENT**.   **On or before June 8, 2015**, Defendants shall respond to the Motion to Compel or file a notice stating that they do not object to the relief requested in this motion.

**DONE AND ORDERED** at Jacksonville, Florida, on June 5, 2015.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record

5

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

        **Plaintiff,**

    **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

        **Defendants.**

_____/

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**
**REGARDING DEPOSITION OF TARA MARCHAND**

**EXHIBIT "C"**
Email Correspondence Between Counsel for the Parties, dated June 8, 2015

**admin**

| | |
|---|---|
| **Subject:** | RE: HAIRSTON |
| **Date:** | Monday, June 8, 2015 at 12:01:07 PM Eastern Daylight Time |
| **From:** | Fraz Ahmed <fahmed@ericblocklaw.com> |
| **To:** | Sorena <Sorena@Fernandeztl.com>, zvonroenn@chrisjohnslaw.com <zvonroenn@chrisjohnslaw.com> |
| **CC:** | Michelle <Michelle@Fernandeztl.com>, Judi <Judi@Fernandeztl.com>, Kathi <Kathi@Fernandeztl.com>, Emy <Emy@Fernandeztl.com> |

I agree Marchand is not your retained expert.  Let me check with Dorothy and Rick regarding Dr. Glenn's appearance.  I would imagine it would be in accordance with Judge's order but let me check with them.

FRAZ AHMED, ESQ.
Partner

**Law Offices of Eric S. Block, PLLC**
6817 Southpoint Parkway, Ste. 2502
Jacksonville, FL  32216
904-475-9400
Fax 904-475-9411
www.ericblocklaw.com
Service email: eservice@ericblocklaw.com

NOTICE: This message is confidential, intended for the named recipient(s) and may contain information that is (i.) proprietary to the sender, and/or, (ii.) privileged, confidential and/or otherwise exempt from disclosure under applicable Florida and federal law, including, but not limited to, privacy standards imposed pursuant to the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Receipt by anyone other than the named recipient(s) is not a waiver of any applicable privilege. Any dissemination, distribution, copying or action taken in reliance on the contents of this e-mail by anyone other than the intended recipient is strictly prohibited. If you have received this e-mail in error, please immediately delete it and notify sender at the above e-mail address. Sender and this Law Firm accept no liability for any damage caused directly or indirectly by receipt of this e-mail. Thank you in advance for your compliance with this notice.

**From:** Sorena [mailto:Sorena@Fernandeztl.com]
**Sent:** Monday, June 08, 2015 11:56 AM
**To:** Fraz Ahmed; zvonroenn@chrisjohnslaw.com
**Cc:** Michelle; Judi; Kathi; Emy
**Subject:** Re: HAIRSTON

Fraz,

In the Affidavit filed by Rick, it is noted that Marchand is our expert.  We have not retained Marchand, as she performed the FCEs of the Plaintiff.  In fact, the attorney handling the deposition also informed Rick she was not our expert.  Additionally, I wanted to confirm that Ms. Sims would be present in person for that deposition and clarify once again she is not our retained expert.

Thanks,

Sorena S. Fallin, Esq.
Sorena@Fernandeztl.com
Fernandez Trial Lawyers, PA
8780-200 Perimeter Park Court
Jacksonville, Florida 32216
(904) 398-8008
(904) 398-0332 (fax)
www.fernandeztl.com

**Confidentiality Notice**
This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual

or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** Fraz Ahmed <fahmed@ericblocklaw.com>
**Date:** Monday, June 8, 2015 at 10:34 AM
**To:** admin <sorena@fernandeztl.com>, "zvonroenn@chrisjohnslaw.com" <zvonroenn@chrisjohnslaw.com>
**Cc:** Michelle <Michelle@Fernandeztl.com>, Asst Judi <judi@fernandeztl.com>, Kathi <Kathi@Fernandeztl.com>, Emy <Emy@Fernandeztl.com>
**Subject:** RE: HAIRSTON

Thanks Sorena.  Also, we're trying to get Baker depo reset but haven't heard back from your office.

FRAZ AHMED, ESQ.
Partner

Law Offices of Eric S. Block, PLLC
6817 Southpoint Parkway, Ste. 2502
Jacksonville, FL  32216
904-475-9400
Fax 904-475-9411
www.ericblocklaw.com
Service email: eservice@ericblocklaw.com
NOTICE: This message is confidential, intended for the named recipient(s) and may contain information that is (i.) proprietary to the sender, and/or, (ii.) privileged, confidential and/or otherwise exempt from disclosure under applicable Florida and federal law, including, but not limited to, privacy standards imposed pursuant to the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Receipt by anyone other than the named recipient(s) is not a waiver of any applicable privilege. Any dissemination, distribution, copying or action taken in reliance on the contents of this e-mail by anyone other than the intended recipient is strictly prohibited. If you have received this e-mail in error, please immediately delete it and notify sender at the above e-mail address. Sender and this Law Firm accept no liability for any damage caused directly or indirectly by receipt of this e-mail. Thank you in advance for your compliance with this notice.

**From:** Sorena [mailto:Sorena@Fernandeztl.com]
**Sent:** Friday, June 05, 2015 5:09 PM
**To:** Fraz Ahmed; zvonroenn@chrisjohnslaw.com
**Cc:** Michelle; Judi; Kathi; Emy
**Subject:** HAIRSTON

Fraz,

If you were still needing to file an extension on Daubert, then we would agree to allow you additional time.

Thanks,

Sorena S. Fallin, Esq.
Sorena@Fernandeztl.com
Fernandez Trial Lawyers, PA
8780-200 Perimeter Park Court
Jacksonville, Florida 32216
(904) 398-8008
(904) 398-0332 (fax)
www.fernandeztl.com

**Confidentiality Notice**

This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

       **Plaintiff,**

  **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

       **Defendants.**

_____/

## DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION OF TARA MARCHAND

**EXHIBIT "D"**
Notice of Taking Continued Deposition Duces Tecum

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY HAIRSTON,

      Plaintiff,

vs.

                         CASE NO.: 3:13-cv-01457-J-32JBT

ED NELSON TRANSPORT,
a Foreign Profit Corporation and
ED NELSON, Individually,

      Defendants.

_____/

### NOTICE OF TAKING CONTINUED DEPOSITION DUCES TECUM

**TO:**    **Tara Marchand**
          **Providian FCE d/b/a Align Networks**
          **450-106 S.R. 13 North, Suite 406**
          **Jacksonville, Florida 32259**

      **YOU ARE HEREBY NOTIFIED** that the undersigned has scheduled the continued deposition duces tecum, pursuant to Federal Rule of Civil Procedure 30(b), of **Tara Marchand,** before **Powers Reporting, at 301 W. Bay St., Suite 1418, Jacksonville, Florida 32202,** or some other authorized officer, on **Wednesday, June 10, 2015, at 9:15 a.m.,** for the taking of her continued deposition, and in addition she shall have with her and produce at the time and place, all documents listed in the attached Schedule "A" for inspection and/or copying by the attorney for the Plaintiff.  Said deposition is taken for the purposes of discovery, for use as evidence in this action, or both, or for such other purposes as are permitted under Federal Rules of Civil Procedure.

      **PLEASE GOVERN YOURSELF ACCORDINGLY.**

LAW OFFICES OF ERIC S. BLOCK, P.A.

**ERIC S. BLOCK**
Florida Bar No.: 0915531
**FRAZ AHMED**
Florida Bar No.: 0025653
6817 Southpoint Parkway, Ste. 2502
Jacksonville, Florida 32216
TEL.: (904) 475-9400
FAX: (904) 475-9411
Attorneys for Plaintiff
Primary email: eservice@ericblocklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via electronic delivery to **Ellis T. Fernandez, III, Esquire,** et@fernandeztl.com; emy@fernandeztl.com; Pleadings@Fernandeztl.com and **Sorena Fallin, Esquire,** Pleadings@Fernandeztl.com; Sorena@Fernandeztl.com at 8780 Perimeter Park Court, Bldg 200, Jacksonville, FL 32216, Counsel for Defendants; and **Christopher Johns, Esquire, Zachary Von Roenn, Esquire,** Johns & Von Roenn, 4901 Atlantic Blvd., Jacksonville, FL 32207, zvonroenn@chrisjohnslaw.com, cjjaxlaw@yahoo.com; Counsel for Plaintiff, for this ___ 29th ___ day of May, 2015.

Attorney

## ATTACHMENT "A"

1.    Any and all documents and/or tangible materials/medical records, MRI or x-ray films and tests which have been provided to you regarding any aspect of this case from any source.   THIS INCLUDES MEDICAL RECORDS FROM OTHER HEALTH CARE PROVIDERS.

2.    Your *entire* file related to Anthony Hairston, including but not limited to, hard copies of emails sent and received, any and all reports, letters, memoranda and/or notes  generated and notes, handwritten or otherwise, graphs, computer printouts, all documents completed by the claimant, copies of tests and test results completed by your office or at your direction, including any and all questions and all models, illustrations, photographs, exhibits or documents of any kind which you intend or contemplate using to explain, illustrate or support your testimony at the trial of this matter.   This includes computer printouts whether printed or not at the time this subpoena is served.   **This request is intended to include every single piece of information, written, electric, or otherwise, which was in any way used to either conduct the compulsory medical examination or used in any way to arrive at or in any way used as any basis whatsoever to form any opinion in this case.**

3.    All records of time spent by you or any member of your staff in connection with the work performed regarding this case, whether billed for or not.   If none are documented then be prepared to advise the attorneys as to the amount you will charge for time spent as of date of testimony.

4.    Your current curriculum vitae.

5.    Publications in which the accepted principles (including basis for test administration and interpretation) and theories upon which you relied to reach your conclusion and opinions, including professional journals, text, or published position papers emanating from seminars and/or symposiums.

6.    Any and all articles and published material authored by you, including the title, date and publishing company of any text, and the name and page numbers of any periodical which contains any article authored by you which you feel are relevant in this case.

7.    A list of all cases in which you have testified as an expert in trial or deposition, conducted an investigation (records review), evaluation and/or prepared a report, for the last three years, specifying the names of parties, identity of counsel, dates such evaluations, records review, or testimony occurred and whether such case was a referral from plaintiff or defense

8.   A list of ALL cases (not limited to three years) in which you have received referrals from the named defendant, or the law firm defending this case or the insurance company who engaged the law firm defending this case, specifying:
     A.   The names of the parties.
     B.   The amount of all monies paid to you on the case in question and from what source.
     C.   The identity of the party who retained you and whether it was plaintiff or defense.  See Allstate Insurance Co. v. Hodges, 28 FLW Dl9l0 (Fla. 2nd DCA 2003) and Allstate Ins. Co. v. Boecher, 733 So2d 993 (Fla. 1999)

9.   A copy of all 1099's and/or all documentation reflecting payments from Fernandez Trial Lawyers, P.A. for the last three (3) years.

10.  A copy of all 1099's and/or all documentation reflecting payments from Great West Casualty for the last three (3) years.

11.  Printed hard copies of all email to or from any source referencing this case.

12.  Any and all test administration manuals and scoring published by the *publisher* of the test itself used in your evaluation. The actual test booklets published by the *creators of* the tests you used i.e. if MMPI2, then most recent manual published by Pearson Assessment,, *in addition* to any other manuals you relied upon or used to determine cutoff scores for the application, interpretation and administration of any and all tests given.  These do not need to be copied but should be available for you to reference should questions about scoring arise.

13.  Hard copies of any and all PowerPoint presentations and/or outlines given or outlines produced for any talks or speeches.

14.  All time records, diaries, and bills, prepared and rendered in connection with your investigation and evaluation of the issues involved in this lawsuit as well as all documents reflecting monies/fees paid or received.  (To include members of your staff) This includes any money paid to you by any party, attorney, carrier or self insured having to do with research and or publication.

15.  Copies of any and all templates used in the generation of any letters or reports.

16.  If more than one physician signs the medical reports generated from your office on this patient, provide documentation showing the monies received by each individual physician relating to this patient.

17.  Any and all items, tapes, things, papers, DVD's, CD's, that were given or sent to the doctor by any source regarding this case, including, but not limited to, surveillance materials, whether that material was returned to the individual who

provided it to the doctor.  If the material was returned, the undersigned requests that it be obtained in time for the deposition, so the Plaintiff's can determine all of the information that may have been provided to this witness.

18.   The undersigned specifically requests the doctor NOT destroy or eliminate or remove any items requested in this document from his/her file regarding the Plaintiff.

19.   All letters, documents, forms and/or reports either in electronic or paper format regarding this client.  This is specifically to avoid a situation where the deponent maybe claim other documents might be in another file or in the custody of someone else in the office.

20.   Copies of all bills, breakdown as to what professional charged for what professional service in this case.

21.   If you are affiliated with a University please bring all Notices of Outside Activities regarding this case.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

       **Plaintiff,**

  **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

       **Defendants.**

_____/

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**
**REGARDING DEPOSITION OF TARA MARCHAND**

**EXHIBIT "E"**
Deposition Transcript of Deposition of Tara Marchand, June 10, 2015

```
 1              UNITED STATES DISTRICT CIRCUIT
                 MIDDLE DISTRICT OF FLORIDA
 2                  JACKSONVILLE DIVISION

 3
     ANTHONY HAIRSTON,
 4
                 Plaintiff,  CASE NO.:3-13-cv-01457-J-32JBT
 5
     vs.
 6

 7   ED NELSON TRANSPORT,
     a Foreign Profit Corporation and
 8   ED NELSON, Individually,

 9              Defendants.
     _____
10

11           CONTINUATION OF THE DEPOSITION OF
                      TARA MARCHAND
12

13           Taken on Behalf of the Plaintiff

14   DATE TAKEN:  June 10, 2015
     TIME:        9:15 a.m. - 10:06 a.m.
15   PLACE:       Powers Reporting, Inc.
                  301 West Bay Street
16                Flagler Room
                  Jacksonville, FL  32202
17

18              Proceedings taken before:

19              Stephanie Powers Cusimano
             Registered Professional Reporter
20            Florida Professional Reporter
                  Powers Reporting, Inc.
21           301 West Bay Street, Suite 1418
                 Jacksonville, FL  32202
22

23

24

25
```

1                    A P P E A R A N C E S

2          ERIC S. BLOCK, Esquire, via phone
           CAITLIN O'DONNELL, Esquire
3
           Law Offices of Eric S. Block, P.A.
4          6817 Southpoint Parkway
           Suite 2502
5          Jacksonville, FL  32216

6          DOROTHY CLAY SIMS, Esquire, via phone

7          Law Office of Dorothy Clay Sims, P.A.
           118 W. Fort King Street
8          Ocala, FL 34471

9          Appearing on behalf of Plaintiff.

10

11         SORENA FALLIN, Esquire

12         Fernandez Trial Lawyers, P.A.
           8780 Perimeter Park Ct Ste 200
13         Jacksonville, FL 32216-2285

14         Appearing on behalf of Defendants.

15

16

17

18

19

20

21

22

23

24

25

1          **TARA MARCHAND,**

2    having been produced and first duly sworn as a

3    witness, having responded, "I do," testified as

4    follows:

5    BY MR. BLOCK:

6          Q     Your name, please.

7          A     Tara Marchand.

8          Q     And, Ms. Marchand, you are here today for

9    the continuation of a deposition that was properly

10   noticed and which you were very courteous and

11   helpful and participated in about a week or ten days

12   ago, right?

13         A     Yes.

14         Q     And in that deposition, that deposition

15   was conducted almost entirely -- as a matter of

16   fact, entirely by Dorothy Clay Sims by telephone

17   with me in the room, correct?

18         A     Correct.

19         Q     And there were no objections made

20   whatsoever during that entire deposition about the

21   manner in which it was being conducted, correct?

22         A     Correct.

23         MS. FALLIN:  Objection.  Form.

24         Q     And you told us about halfway or

25   two-thirds of the way, or however long we are

1    through the deposition, we don't know because we

2    haven't concluded it yet, but we got a good way

3    through the deposition and you told us you had to

4    pick up your child at school, correct?

5         A    Correct.

6         Q    And we made arrangements to continue the

7    deposition today, which was the earliest possible

8    time, and I could not even be there today, but I

9    said, go ahead and schedule it today because we

10   get -- we need to get it taken, correct?

11        A    Correct.

12        Q    And you have not -- you have not raised

13   one single objection to continuing the deposition

14   just the way it was conducted ten days ago until

15   right now; am I correct about that?

16        A    Correct.

17        Q    And --

18             MS. SIMS:  Wait.

19             MS. O'DONNELL:  No, Rick --

20             MS. SIMS:  Can we clarify what --

21             MS. O'DONNELL:  -- she's not objecting,

22        Opposing Counsel is objecting.

23             MR. BLOCK:  I understand that.

24             MS. SIMS:  The witness has not objected.

25             MR. BLOCK:  I'm not stupid.

```
 1              MS. SIMS:  She's advised me she has no

 2         objection with me conducting this deposition by

 3         phone.

 4              MR. BLOCK:  I can't hear a word she said.

 5              MS. O'DONNELL:  Dorothy said -- Dorothy

 6         was just reiterating what I said, that it's not

 7         the witness who's objecting to Dorothy

 8         appearing by phone.

 9              MR. BLOCK:  I understand that.  I'm making

10         that clear for the Federal Court, okay?  Can I

11         continue now?

12              MS. O'DONNELL:  Yes.

13              MR. BLOCK:  I am very, very upset about

14         this.  This is posturing.  I'm going to move

15         for sanctions.  I'm going to move for fees and

16         costs.  I'm going to move that this witness be

17         stricken.  This is game-playing.  We have been

18         given --

19   BY MR. BLOCK:

20         Q    Ma'am, Ms. Marched, continuing with my

21   questions to you.  To your knowledge, have we been

22   given any notice until right now that there was any

23   problem with Ms. Sims or I continuing your

24   deposition exactly in the manner it was taken ten

25   days ago?
```

```
 1        A    Not to my knowledge.

 2        Q    And you're willing to -- you're willing to

 3   move forward with the deposition today but for the

 4   instructions of your employer in this case, who's

 5   the defense lawyer; is that right?

 6             MS. FALLIN:  Objection.  Motion to -- move

 7        to strike.

 8        A    I'm willing -- I don't know who asked me

 9   to appear, I'm willing to testify.

10        Q    You're willing to testify.  All right.

11   Then let's go forward with the deposition.

12             MR. BLOCK:  Dorothy, begin your questions.

13             MS. SIMS:  What did you say?

14             MS. FALLIN:  You need -- I need to -- we

15        need to go off the record.  Rick, I need to

16        call E.T.

17             MR. BLOCK:  There is no off the goddamn

18        record.

19             MS. FALLIN:  I am not her --

20             MR. BLOCK:  I am sick of this.

21             MS. FALLIN:  On the record, I am not her

22        employer.

23             MR. BLOCK:  On the record, the Federal

24        Court is going to hear all of this.  Let's go.

25             MS. FALLIN:  They did not properly notice
```

1     the deposition as a telephonic deposition.  I

2     contacted Opposing Counsel and asked if she's

3     going to be in person, he said that they would.

4     I would let me -- he would let me know if that

5     was any other way in compliance with the other

6     motion for protective order.

7         MS. SIMS:  Was this something that Fraz

8     told you?

9         MS. FALLIN:  Yes.  I said to Fraz, is she

10    going to be appearing in person because of

11    what's recently occurred, and he said, I do

12    believe she is.  I'll let you know if something

13    changes.  I came here presuming that you were

14    going to be here in person.  There was not --

15    there was not any indication that you were not.

16        MR. BLOCK:  Had you filed anything?

17        MS. FALLIN:  No.

18        MS. SIMS:  I'm sorry, what?

19        MS. FALLIN:  I did not know until I came

20    here today because it was not a notice of

21    telephonic deposition and I was -- my

22    understanding, Mrs. Sims was going to be here

23    in person.  Therefore --

24        MR. BLOCK:  That's great.  That's great.

25        Dorothy, start the deposition.

```
 1              MS. SIMS:  All right.  I'd like to take a

 2    break for a moment, however, Rick, because I

 3    want to call you and talk to you on your cell

 4    phone.  Are you available?

 5              MR. BLOCK:  Yes.

 6              MS. O'DONNELL:  I'm hanging up with you,

 7    Rick.

 8              MS. SIMS:  I'm going to hang up and I'll

 9    call back in a few minutes, okay?

10              MR. BLOCK:  Yep.

11              MS. O'DONNELL:  I'm hanging up, Rick.

12    Bye.

13              (Recess from 9:40 a.m. to 9:47 a.m.)

14              (Mr. Block not participating.)

15              MS. SIMS:  We're going to do it tomorrow.

16    Why don't you call him right now and say we're

17    going to do it tomorrow and we'll put that on

18    the record after you talk to him.

19              MS. FALLIN:  Who, E.T.?

20              MS. SIMS:  Yeah, tell E.T. we're going to

21    do it tomorrow.  I talked to Rick.  Do you want

22    to step out and call him?

23              MS. FALLIN:  Yeah.

24              (Recess from 9:52 a.m. to 9:54 a.m.)

25              MS. SIMS:  Let's go on the record, then.
```

1      That's perfect.

2            My name is Dorothy Sims and I'm stating on

3      the record that Defense has objected to the

4      deposition of this witness, indicating that

5      they wanted me to attend this deposition by

6      phone -- I mean live even though the last

7      deposition was -- I attended by phone, there

8      was no objection, and even though this witness

9      has stated that she has no objection to me

10     taking her deposition by phone, and even though

11     no motion was filed to object to me attending

12     this deposition by phone.  We object to the

13     continuation of this deposition because of the

14     short timelines.  We've got deadlines for

15     motions to be filed on Monday.  This puts

16     significant difficulties on our end to get the

17     transcript, file motions, et cetera, necessary.

18     We object to continuing this deposition.

19           However, the witness has indicated she's

20     going to be available at 3:30 tomorrow.  The

21     deposition can take place at the same place as

22     Dr. Glen's deposition, and we will attend

23     tomorrow over our objections to this being

24     continued.

25           And, Tara, I just need to confirm a couple

1    of things with you just to make things go

2    quicker.  As I understand it, you don't -- your

3    research revealed that you didn't have any more

4    documents on this case; is that correct?

5         THE WITNESS:  Correct.

6         MS. FALLIN:  I'm objecting to further

7    questioning.

8         MS. SIMS:  And you have a manual with you,

9    the Matheson manual, that you brought with you

10   today, correct?

11        THE WITNESS:  Correct.

12        MS. SIMS:  Okay.  And I was thinking to

13   save time -- how many pages is it?

14        THE WITNESS:  Hundreds.

15        MS. SIMS:  Okay.  Like over 300, over 400?

16        THE WITNESS:  It's hard to tell.  It's all

17   tabbed.

18        MS. FALLIN:  It's like two to three

19   inches.

20        THE WITNESS:  Yeah, and it's all tabbed

21   and --

22        MS. SIMS:  All right.  Because we may need

23   to attach it to the deposition, and I'm

24   thinking it might be faster for -- well, I

25   think that's just too much to ask of the court

1    reporter, so if you want to -- could you leave

2    it with the court reporter so that I can look

3    over it tomorrow and determine some questions I

4    may have based on its content?

5         THE WITNESS:  Sure.

6         MS. SIMS:  Okay.  All right.  Well,

7    subject to our objection, then it looks like

8    tomorrow this deposition will occur in light of

9    Defendant's refusal to go forward with it.  It

10   will occur at 3:30 tomorrow at the same

11   location that the witness is in currently.

12        MS. FALLIN:  I'm going to make a statement

13   as well.  Mrs. Sims, were you done?

14        MS. SIMS:  I think so, yeah.

15        MS. FALLIN:  Okay.  This is defense

16   counsel for Ed Nelson and Ed Nelson Transport.

17   We -- the notice was -- of taking continued

18   deposition, it was not noticed as a telephonic

19   deposition.  The defendants have not stipulated

20   to having Mrs. Sims appear telephonically.  We

21   notified Plaintiff's counsel on June 8th by

22   e-mail that it was our understanding that

23   Mrs. Sims would be appearing in person, please

24   let us know if this is not correct.  The return

25   e-mail was that he believed that it would be in

1    compliance with what the Court had said on the

2    previous with Dr. Glen, but he would let me

3    know if that changed.  I was never notified

4    that Mrs. Sims would not be here in person and,

5    therefore, we did not believe that it was

6    properly noticed, and that's our position for

7    our objection.  The witness has no objection to

8    the deposition being moved because it was, you

9    know, not properly noticed.

10        Additionally, just to make sure the record

11   is clear, that it was noted by Counsel that we

12   represent Mrs. Marchand, and we do not.

13        MS. SIMS:  I think he said employer.  I

14   think he said employer --

15        MS. FALLIN:  We do not employ --

16        MS. SIMS:  -- but I'm not sure.

17        MS. FALLIN:  -- Mrs. Marchand either.

18        MS. SIMS:  Are you done?

19        MS. FALLIN:  I am.

20        MS. SIMS:  Okay.  Could we -- I hate to

21   ask this again, but could we go off the record

22   for just a second because I may need to go back

23   on again.  I have -- I got a call from Rick and

24   I just want to make sure.  So can we do that

25   for just a moment, go off the record?

```
 1          MS. FALLIN:  You know what, I object.  I

 2     think we're done.  I think that you've said

 3     everything you need to say.

 4          MS. SIMS:  Well, I don't think we are,

 5     so --

 6          MS. FALLIN:  This deposition is not going

 7     forward.

 8          MS. SIMS:  Caitlin, let me ask you to go

 9     outside and just call Rick on his cell phone

10     and find out what the issue is and then come

11     back and send me an e-mail about it or whatever

12     so that we can know if we need to add anything

13     else on the record.

14          MS. O'DONNELL:  I've stepped out of the

15     room.

16          MS. SIMS:  Well, I understand that you

17     want to stay on the record and we will stay on

18     the record, but I'm going to -- if we could be

19     silent for a moment until we determine if

20     Mr. Block needs to say anything on the record

21     as well.

22          (Mr. Block participating via phone.)

23          MS. O'DONNELL:  Dorothy, he's now on

24     speakerphone and is on the record.

25          Go ahead, Rick.
```

```
 1              MR. BLOCK:  I just rejoined the

 2      conversation, and I don't know what was said.

 3      I understand that there's something agreed,

 4      but -- that I will live by, but I also want it

 5      to be known that I have contacted my partner,

 6      Fraz Ahmed, and we will be attaching the e-mail

 7      by Defense Counsel that did not say what he

 8      represented on the record that it said.

 9              First of all, I have never said that --

10      that Ms. Marchand is Defense -- is Defense's

11      retained expert.  She is their expert.  They

12      are calling her to give expert opinions.  And

13      whether or not she's a retained expert or not

14      doesn't matter.  It's irrelevant to any of

15      these issues.  But it's just also wrong and it

16      misrepresents what's -- what has occurred.

17              Secondly, the e-mail, which will speak for

18      itself, which will be attached to this

19      deposition, does not say anything about

20      requiring Ms. Sims to be here for today's

21      deposition, only as to Ms. Glen.  And we'll

22      attach that to our motion for sanctions as

23      well.  Thank you.  Good-bye.

24          (Exhibit 9 was marked for identification.)

25          (Mr. Block leaves the deposition.)
```

```
 1          MS. FALLIN:  I'm going to read the e-mail

 2     for the record.  "Fraz, In the affidavit filed

 3     by Rick, it is noted that Marchand is our

 4     expert.  We have not retained Marchand, as she

 5     performed the FCEs of Plaintiff.  In fact, the

 6     attorney handling the deposition also informed

 7     Rick she was not our expert.

 8          "Additionally, I wanted to confirm that

 9     Ms. Sims would be present in person for that

10     deposition and clarify once again she is not

11     our retained expert."

12          "I agree Marchand is not your retained

13     expert."  This is from Fraz.  "Let me check

14     with Dorothy and Rick regarding Dr. Glenn's

15     appearance," which our understanding would be

16     Dr. Sims.  "I would Imagine it would be in

17     accordance with Judge's orders, but let me

18     check with them," and that's the end.  That was

19     on June 8th, 2015.  Okay.

20          MS. SIMS:  All right.  Okay.  So if you'll

21     leave the manual with the court reporter, then

22     I can take a look at it.  And there's no other

23     documents that you have other than what was

24     provided at the last deposition, right?

25          THE WITNESS:  Correct.
```

```
 1              MS. SIMS:  And what you e-mailed to me as

 2      well?

 3              THE WITNESS:  Correct.

 4              MS. SIMS:  Did you bring those documents

 5      with you by any chance, the ones you e-mailed

 6      to me?

 7              THE WITNESS:  Yes.

 8              MS. SIMS:  Okay.  If you could leave those

 9      with the court reporter because we have to have

10      the documents in our possession for the

11      deposition tomorrow, then that way we can have

12      them attached as well.  In fact, since you're

13      there live, we can certainly attach those

14      documents to this -- the statements that were

15      made on the record, and that will make it

16      easier tomorrow when we take the deposition.

17              THE WITNESS:  Okay.

18              MS. SIMS:  All right.  That would be for

19      the second deposition -- or the statement on

20      the record, it would be the documents that you

21      brought, which are the blank pain scales,

22      right?

23              (Exhibit 10 was marked for

24  identification.)

25              THE WITNESS:  Yes, the pain questionnaire
```

1    and the blank intake questionnaire.

2         MS. SIMS:  And the Waddell questions?

3         THE WITNESS:  I forget what I sent you,

4    then.  The Waddell's Non-Organic Signs, they're

5    included in the -- they're included in the

6    intake questionnaire, a smaller version of

7    that.

8         MS. SIMS:  Okay.  All right.  Everything

9    that you e-mailed me you brought with you

10   today, right?

11        THE WITNESS:  Well, maybe I didn't.  I

12   can't remember.  I know I brought these two --

13   I know I sent you these two things.  What did I

14   send you on Waddell's?

15        MS. SIMS:  All right.  Let me find that

16   here.  Bear with me a second.

17        THE WITNESS:  It wasn't that.

18        MS. SIMS:  I had eight pages.  It says

19   Functional Capacities Evaluation Pain

20   Questionnaire.

21        THE WITNESS:  I have that, yes.

22        MS. SIMS:  Borg Pain Scale.

23        THE WITNESS:  Yeah, that's -- that's all

24   one.  And then there's another, the blank

25   intake questionnaire.

1        MS. SIMS:  It says Digital Analog Scale,

2   McGill's Pain Questionnaire, Waddell's

3   Questionnaire, Ransford Pain Drawing, and

4   Medical History?

5        THE WITNESS:  Okay, yes.  We have all

6   that.

7        MS. SIMS:  Perfect, okay.  Well, if you

8   could just leave that with the court reporter,

9   then we'll have that for tomorrow so that we

10   can refer to it, and the manual.  And then

11   you'll be there at 3:30 tomorrow, correct?

12        THE WITNESS:  Yes.  And I'll have till

13   five o'clock because then I'll have to go to

14   get them, is that okay?  We have an hour and a

15   half?

16        MS. FALLIN:  I'm thinking.

17        MS. SIMS:  Well, I mean, presuming we'll

18   be able to get it done, I hope we'll be able to

19   get it done.  And if not, we'll just have to

20   figure something out.

21        THE WITNESS:  Okay.

22        MS. FALLIN:  Thank you.

23        MS. SIMS:  All right.  All right.  Thank

24   you.  And that's -- Reporter, we will need a

25   copy of that with the attachments.

1          (Off-the-record discussion.)

2          MS. SIMS:  All right.  Well, thank you and

3     we will see everyone tomorrow.

4          MS. O'DONNELL:  Thanks, Dorothy.

5          MS. SIMS:  Thank you, Tara.

6          THE WITNESS:  Thank you.

7          (Witness excused.)

8          (Deposition adjourned at 10:06 a.m.)

9                    -   -   -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF OATH

2

3   STATE OF FLORIDA)

4   COUNTY OF DUVAL )

5

6       I, the undersigned authority, certify that

7   **TARA MARCHAND** personally appeared before me on June

8   10, 2015, and was duly sworn.

9

10      WITNESS my hand and official seal this 10th day

11  of June 2015.

12

13

14  _Stephanie Powers Cusimano_
    _____
    Stephanie Powers Cusimano, RPR, FPR
15  Notary Public - State of Florida
    My Commission No. EE616696
16  Expires:  August 3, 2016

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2    STATE OF FLORIDA   )

3    COUNTY OF DUVAL    )

4

5         I, Stephanie Powers Cusimano, Registered

6    Professional Reporter, Florida Professional Reporter,

7    and Notary Public in and for the State of Florida at

8    Large, hereby certify that I was authorized to and did

9    stenographically report the deposition of **TARA**

10   **MARCHAND** and that the foregoing transcript, pages 1

11   through 19, is a true record of my stenographic notes.

12

13        I further certify that I am not a relative,

14   employee, attorney, or counsel of any of the parties,

15   nor am I a relative or employee of any of the parties'

16   attorney or counsel connected with the action, nor am

17   I financially interested in the action.

18

19        DATED this 10th day of June 2015.

20

21                    *Stephanie Powers Cusimano*
                      _____
22                    Stephanie Powers Cusimano, RPR,
                      FPR, Court Reporter

23

24

25

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**CASE NO.: 3:13-cv-1457-J-32BT**

**ANTHONY HAIRSTON,**

            **Plaintiff,**

      **vs.**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

            **Defendants.**

_____/

**DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**
**REGARDING DEPOSITION OF TARA MARCHAND**

**EXHIBIT "F"**
Correspondence Between Counsel, dated June 10, 2015

**Subject:** RE: Hairston- Dr. Glen

**Date:** Wednesday, June 10, 2015 at 4:59:39 PM Eastern Daylight Time

**From:** Caitlin O'Donnell

**To:** Sorena

**CC:** ET, Rick Block, Fraz Ahmed, Dorothy Clay Sims, Michelle, Judi, Kathi, Ruth, Maryanne, Emy

Dear Sorena,

It is my understanding that the Order on Defendant's Motion for Protective Order requiring Ms. Sims to appear in person applies only to the deposition of Dr. Glen.

However, as was indicated on the record today, Ms. Sims is appearing in person for both depositions tomorrow, as Tara Marchand's deposition is scheduled to follow Dr. Glen's deposition. This is also assuming that we can finish Dr. Glen's deposition by the time Ms. Marchand is scheduled to be deposed tomorrow.

Thanks,
Caitlin O'Donnell

**From:** Sorena [mailto:Sorena@Fernandeztl.com]
**Sent:** Wednesday, June 10, 2015 4:48 PM
**To:** Caitlin O'Donnell
**Cc:** ET; Rick Block; Fraz Ahmed; Dorothy Clay Sims; Michelle; Judi; Kathi; Ruth; Maryanne; Emy
**Subject:** Re: Hairston- Dr. Glen

Dear Caitlin,

I also wanted to confirm that the Order regarding Ms. Sims appearing in person applies to Tara Marchand's deposition tomorrow. If not, would you please let me know immediately so we can seek a protective Order to the Court.

Thanks,

Sorena S. Fallin, Esq.
Sorena@Fernandeztl.com
Fernandez Trial Lawyers, PA
8780-200 Perimeter Park Court
Jacksonville, Florida 32216
(904) 398-8008
(904) 398-0332 (fax)
www.fernandeztl.com