UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY HAIRSTON,

    Plaintiff,

vs.

CASE NO.: 3:13-cv-01457-J-32JBT

ED NELSON TRANSPORT,
a Foreign Profit Corporation and
ED NELSON, Individually,

    Defendants.
_____/

### AFFIDAVIT OF DR. JAMES N. BUTCHER, PhD.

WASHINGTON, DC )
_____/

### AFFIDAVIT FROM Dr. James N. Butcher, PhD.

BEFORE ME, the undersigned authority, personally appeared James N. Butcher being by me first duly sworn and deposed, says as follows:

1. My name is James N. Butcher, PhD. I am over 21 years of age and I have personal knowledge of the facts attested to in this Affidavit.

2. I am Professor Emeritus in the Department of Psychology at the University of Minnesota.

3. I served on the MMPI-2 Revision Committee for the test publisher, University of Minnesota Press and was the first author of the publication of the MMPI-2 in 1989.

4. I have published 26 books specifically on the MMPI and MMPI-2 and have published 175 articles on the MMPI/MMPI-2 or MMPI-A.

5. I have taught courses and workshops on MMPI/MMPI for 50 years and founded the MMPI-2 Workshops and Symposium series in 1965 to provide training in MMPI interpretation to mental health professionals.

6. I developed the Minnesota Reports computer software, which scores and interprets the MMPI-2 for Pearson Assessments. I developed the administration and interpretation manual for the MMPI-2 sold by the publisher.

7. I developed the Extended Score program computer software (that was formerly incorporated in the Minnesota Reports) that was used by Dr. Glen to score the MMPI-2 in this case.

8. I have reviewed the report authored by Dr. Tanahill Glen in the above styled case and reviewed the MMPI-2 printout and scores that were administered in this case.

9. I have been asked to assume her deposition sets forth the following testimony:

    a. She has no test administration or interpretation manual of various measures such as the Heilbronner index or the RBS, (response bias scale).
    b. The actual items that made up the Heilbronner index were provided on a document which is unpublished and simply numbers typed on a piece of paper and Dr. Glen could not testify where she obtained it.
    a. Instead, she relies on limited publications to support her conclusions that it is appropriate to ignore the validated exaggeration scales on the MMPI-2 in favor of these new scales.
    b. The items on the FBS, RBS and Heilbronner Index are irrelevant in the interpretation of the MMPI-2.
    c. Symptoms that may account for the elevations in scales such as the ones listed above should be ignored in favor of concluding exaggeration. For example, if a scale affords points for malingering for honestly admitting to symptoms of a condition the plaintiff has, that alternative explanation cannot be ignored in favor of presuming an individual was lying.
    d. It is appropriate to rely upon an article suggesting an alternative new scale or interpretation of the MMPI-2 in favor of more well validated scales.
    e. It is appropriate to author a report, conclude malingering and leave out any tests or scores supporting that conclusion and further fail to admit the names of those malingering scales passed.

10. After reviewing the report and the actual MMPI-2 printout provided by Dr. Glen on Mr. Hairston, it is my opinion that Dr. Glen has misrepresented the results of the MMPI-2 as set forth in greater detail below.

11. The results of this MMPI-2 *do not* indicate malingering, in fact, they reveal a lack of exaggeration on the traditional validity measures (F, F(B) and F(p) and the test results are valid and indicate that the patient shows mental health symptoms by elevations on several MMPI-2 scales, including the Depression scale and the Psychasthenia Pt), an anxiety scale.

12. Dr. Glen ignores valid exaggeration scales such as the F, F(B), and F(p) which have been around for over many years in favor of newer less well validated measures which is an inappropriate use of this test

13. Her report fails to acknowledge that she is ignoring the MMPI-2 test manual in favor of an article suggesting a possible interpretation.

14. The MMPI-2 in this case reveals the Plaintiff did not elevate any of the MMPI-2 scales that were developed to determine whether a patient was exaggerating or defensive in symptom presentation.

15. Dr. Glen did not address the lack of exaggerated responding on the part of the client on the well established and well validated validity measures that address symptom exaggeration in the MMPI-2. On page 5 of her report she refers to testing supporting his depression and anxiety as only "mild"

16. This is false and misleading and contrary to the actual results of the MMPI-2. In fact, his MMPI-2 depression score is 72 which per the manual places him in the *highly* depressed range. His score is above even the moderate range of depression which was left out of her report. Ignoring symptoms that were reported on the MMPI-2 can be potentially harmful to a client, for example, by not acknowledging if someone is highly depressed when the MMPI-2 is valid. Misrepresenting his scores as reflective of only mild depression is dangerous to the patient and can result in inappropriate or incomplete treatment recommendations.

17. Furthermore, his score on the Psychasthenia scale was at a T score of 72 (also in the high range) which, per the interpretation manual was in the moderately elevated range. This is an anxiety scale and she left this out of her report and reported, instead, his anxiety as only "mild." Morover, the scores on scales used to measure somatic disorders (Hs and Hy) measure very real physical symptoms and the practitioner must interpret the scales in light of these conditions which Dr. Glen failed to do. These conclusion misrepresents the actual results of the MMPI-2.

18. His depression in this scale tends to come from physical malfunctioning per the Harris Lingoes scales which can easily be described by physical pain and injury vs somatization as implied in her report. This was also left out of her report in favor of a conclusion that there is evidence of "extreme somatic symptoms" In fact, elevations on these scales are typical of patients who have legitimate non malingered medical conditions which cause pain.

19. Dr. Glen's report is inadequate in that it fails to provide empirical support for her conclusions. She left out discussion of the tests she relied upon to reach conclusions

and fails to address various important elevated scores. Her report fails to identify the tests or scales supporting her conclusions making it impossible for any psychologist or lawyer reading her report to understand what tests or scores supported her conclusions the plaintiff is malingering etc. As such, her report is incomplete and it would be almost impossible for someone to have even a minimal understanding as to the basis for her conclusions.

20. I have taught students how to author reports relying upon the MMPI-2 for over 50 years and would advise that:

   a. If someone authors a report setting forth the results of an MMPI-2 the individual must clearly set forth those situations wherein the author deviates from the suggested interpretations from the test manuals
   b. The individual should not, as in this case, present an incomplete and misleading report;
   c. The fact that the patient showed no elevation on *all* standard MMPI-2 validity scales that address symptom exaggeration was left out of the report in favor of concluding malingering based on an unnamed test or measure is misleading;
   d. And the fact that the patient was in the "High" range of mental health symptoms such as depression and anxiety and instead refer to those symptoms as only mild is misleading;
   e. And the claim that the MMPI-2 supports malingering are inappropriate, misleading and wrong:
   f. In my opinion, these deviations from standard MMPI-2 interpretation procedures is not an appropriate MMPI-2 evaluation procedure.

21. Moreover, rather than using the traditional research based measures of symptom exaggeration such as F, F(B) and F(p) Dr. Glen relied upon new and unproven "scales" including

   a. The Heillbronner Index
   b. The RBS (Response Bias Scale) scale
   c. The Fake Bad Scale

22. The fact that she failed to rely on standardized test administration or the interpretation manual deviates from the requirements set forth by the American Psychological Association on test administration and interpretation. See Exhibit A.
   a. The APA Standards indicate "The usefulness and interpretability of test scores require that a test be administered and scored according to the developer's instructions."
   b. She did not meet the standards noted in the Manual in the authoring of her report.

23. If a psychologist authors a report and fails to identify the specific tests and scores that support her opinion she also violates the APA Specialty Guidelines for Forensic Psychology which requires 10.06 that the expert document "all data

they consider with enough detail and quality to allow for reasonable judicial scrutiny and adequate discovery by all parties" Furthermore, her report violates 11.03 which states that "Forensic practitioners are encouraged to disclose all sources of information obtained in the course of their professional services, and to identify the source of each piece of information that was considered and relied upon in formulating a particular conclusion, opinion, or other professional product" Finally, 11.04 of this publication makes it clear that when authoring a report the expert must "strive to offer a complete statement of all relevant opinions that they formed...the basis and reasoning underlying the opinions, the salient data or other information that was considered in forming the opinions..."

24. Her methodology of:
   a. Authoring a report
   b. Concluding malingering;
   c. Admitting which tests were giving but failing to identify those tests or scales supporting malingering and, in fact, not mentioning them by name anywhere in her report
   d. Failing to admit and identify those scores per the manual created by the authors the patient's scores are not in malingering range and address the actual scores in the report
   e. Concluded malingering based on an article vs the actual test manual the report deviates from standards for authoring reports.
   f. Her report failed to acknowledge this deviation which is also a violation. Reading her report gives the reader no information on how she reached conclusions or which scales or scores she claims support her conclusion. A psychologist or lay person reading this report would have literally no information as to the basis of her conclusions such that it could be assessed for validity.

   g. The Buros Center for Testing is a nationally known independent organization well respected for its work in assessing the scientific validity of various psychological measurements.
   h. This Center *has* evaluated the MMPI-2 which has the F, F(p), F(B) scales referenced above.[i]
   i. The Center has not conducted any such evaluation on the FBS scale[ii],
   j. The Heilbronner Index [iii]
   k. Nor the RBS scale.[iv]
   l. The fact that an article suggests creating a new "scale" or "index" based on items from the MMPI-2 does not suggest that new interpretation is valid. This is especially so if the measure has not been validated by an organization such as Buros and even more so if there is no published test administration and interpretation manual by a test publisher which means the manual must go thru the rigors of scientific validation as a manual. Those rigors are far greater than the rigors that may or may not exist for the publication of an article. In fact, in one of her scales, the Fake Bad Scale, was first published in what is known as a "pay journal" meaning it was not subjected to

independent and blind peer review but was published because the author of the article paid the journal to do so. This is not empirical science.

**As to the Heilbronner Index**
m. If the publication of the index does not publish the scores and the author suggests individuals contact him for the items make it impossible to validity the instrument. This methodology is not endorsed by the APA on testing nor any other respected psychological organization.
n. The existence of an article does not make a test legitimate. The absence of a test administration and interpretation manual makes it highly suspect.
o. The fact that there is no standardized test administration or interpretation manual make it impossible to validate. Unlike the test manual for the MMPI-2 which does not address the RBS or Heilbronner Index, this method means there is no test administration and interpretation manual which means:
a. There are no published standards for administration
b. There are no published standards for interpretation
c. There are no published standards for Standardized scoring
d. There are no published standards for cross validation
e. There is no published supportive research as required by manuals
f. Just publishing an article on a new "scale" invented by someone who has a vested interest in the outcome does not go thru the rigors of a test manual per APA standards for educational testing.

**As to the Response Bias Scale**
p. Dr. Glen apparently failed to produce the administration and interpretation manual for the scale.
q. Dr. Glen failed to account for other more likely explanations for elevation in this new scale which is an inappropriate use of the MMPI-2.
r. This new scale has not been validated sufficiently such that it is even included in the scoring or interpretation software she used to score the MMPI-2.

**As to the "Fake Bad Scale"**
s. As to her reliance on the **Fake Bad Scale**, while the scale is not valid as discussed below, her conclusion that it somehow supports exaggeration is untrue based upon the FBS Manual Supplement by Ben-Porath, Graham and Tellegen.
t. While I do not believe the scale is valid, the cut score above which one may conclude even the possibility of malingering is above 23 and should be 30 or higher for clients with known mental health or physical problems. The plaintiff's score is below that cut-off scores recommended in the FBS Manual by Ben-Porath, Graham & Tellegen.
u. The FBS is currently being scored by software from Pearson Assessments, a discussion or consideration as to the score is not addressed in the interpretive report because of research showing that this scale can be misused because persons with genuine health problems tend to score high on the FBS. Furthermore, until recently Pearson Assessments was informing psychologists and neuropsychologists throughout the U.S. *not* to rely on this test as it was unscientific and unreliable.
v. The FBS is a scale that gives points for exaggerating for responding to questions that ask about physical and mental symptoms. As such, it is biased in favor of

the defense because if the plaintiff admits to legitimate symptoms of injury the conclusion is drawn that the plaintiff is malingering
w. The FBS scale has been excluded from testimony in a number of courts.
x. Based on the available research on the Lees-Haley Fake Bad Scale, this measure is scientifically unacceptable because it does not reliably and accurately discriminate clients with genuine health or mental health problems from those that are malingering mental health symptoms.
y. We have shown, in research (Butcher, J. N., Arbisi, P. A., Atlis, M., & McNulty, J. (2003). The construct validity of the Lees-Haley Fake Bad Scale (FBS): Does this scale measure malingering and feigned emotional distress? *Archives of Clinical Neuropsychiatry.18*, 473-485), that clients in mental health and health care settings score high on the FBS. Therefore, it is my opinion that people with health or mental health problems that score high on FBS are not likely malingering but are describing their actual symptoms.

## Conclusion

Dr. Glen misrepresented the results of Mr. Hairston's MMPI-2. Contrary to her claim, this MMPI-2 does not support exaggeration, malingering or intentional misrepresentation. In fact, it supports the contrary conclusion. Furthermore, the report leaves out significant information that could prove quite dangerous to the patient if ignored. The fact that he fell within the high range for clients who are depressed, and anxious (the Pt scale) and her report concludes only "mild" depression and "mild" anxiety is misleading. Her reliance on these new "scales" without an acceptable research base and standardized manuals is unscientific and unsupportable. One cannot interpret these new scales in a vacuum. The MMPI-2 is only a hypothesis which may or may not be correct depending on the facts. If there are other more reasonable explanations for elevations on scales such as injury they must not be ignored. standardized interpretation. If a student of mine authored a report such as Dr. Glen provided, the conclusions would be unacceptable.

**FURTHER AFFIANT SAYETH NAUGHT.**

*[signature]*
Dr. James Butcher, PhD

Washington, D.C. )

BEFORE ME, personally appeared JAMES N. BUTCHER, who is personally known to me or who has provided __DC Drivers License__ as identification, and who, after being duly sworn under oath, deposes and says that he has read the foregoing Affidavit and it is true and correct to the best of his knowledge.

SWORN TO AND SUBSCRIBED before me this __15th__ day of June, 2015.

Kristin C. Bovell
District of Columbia, Notary Public
My commission expires:
August 31, 2019

*[notary seal and signature]*

---

[i] http://marketplace.unl.edu/buros/test-reviews/alphabetical-list?let=M&p=11
[ii] http://marketplace.unl.edu/buros/test-reviews/alphabetical-list?let=F
[iii] http://marketplace.unl.edu/buros/test-reviews/alphabetical-list?let=H&p=3
   1. [iv] http://marketplace.unl.edu/buros/test-reviews/alphabetical-list?let=R&p=3