UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY HAIRSTON,

        Plaintiff,

vs.

CASE NO.: 3:13-CV-01457-J-32JBT

ED NELSON TRANSPORT,
a Foreign Profit Corporation and
ED NELSON, Individually,

        Defendants.
_____/

### PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED MOTION TO STRIKE PLAINTIFF'S EXPERT, JAMES BUTCHER, PH.D., OR IN THE ALTERNATIVE MOTION FOR EXTENSION OF TIME

COMES NOW the Plaintiff, Anthony Hairston, and responds to Defendants' Amended Motion to Strike Plaintiff's Expert, James Butcher, Ph.D., or in the Alternative, Motion for Extension of Time as follows:

#### SUMMARY OF THE ARGUMENT

In order to properly challenge expert opinions, it is first necessary to understand the basis of those opinions. Defendants and their expert witness, Dr. Tannahill Glen, have engaged in conduct that interfered and delayed the Plaintiff's ability to discover the basis of Dr. Glen's opinions and now seek to benefit from these dilatory and obstructive tactics.

Defendants sought and obtained an extension to produce Dr. Glen's report, fought production of Dr. Glen's raw data and test material, unilaterally cancelled Dr. Glen's discovery deposition, and demanded a Court Order precluding Plaintiff's counsel from accessing the internet or using her computer while cross-examining Dr. Glen. Furthermore, the Defendants sought to shorten the time in which Dr. Glen could be deposed.

In short, both Dr. Glen and the Defendants made it extremely difficult for the Plaintiff to discover and understand the basis of Dr. Glen's opinions. Due to these ongoing efforts undertaken by the Defendants and Dr. Glen, it was not until Dr. Glen's deposition on June 11, 2015, that the Plaintiff was finally able to understand the basis of Dr. Glen's opinions. Dr. Glen's initial discovery deposition which the Defendants unilaterally cancelled without Court Order was scheduled for May 27, 2015. It was not until Dr. Glen's discovery deposition that the Plaintiff learned that the basis for Dr. Glen's opinions would not pass muster pursuant to *Daubert*. Additionally, it was not until Dr. Glen's discovery deposition that Plaintiff learned that Dr. Glen's opinions were based upon documentation which was never produced prior to her discovery deposition. Defendants now seek to preclude Dr. James Butcher from testifying as to whether the methodology used by the Defendants' retained expert, Dr. Glen, is scientifically valid pursuant to *Daubert* because he was not named and did not produce a report setting forth his challenges to Dr. Glen's opinions.

While Defendants claim Dr. Butcher's opinion is not admissible because he was not listed as a witness secondary to the Court's Scheduling Order, Defendants cite case law which actually supports the opposite finding, and supports the Plaintiff's position. As discussed in further detail below, the *Arble* case cited by the Defendants actually holds that such *Daubert* opinions *were* admissible even though the expert was not noticed per the Court Order because the expert is not testifying at trial and was only retained for *Daubert* purposes. The Court in *Arble*, relied upon by the Defendants in this case, denied the Defendant's Motion to Strike for the same reasons that support the same conclusion in this case at hand.

2

## STATEMENT OF THE FACTS

1. Defendants' subject Motion admits Defendants sought an extension in which to produce Dr. Glen's report.

2. This Court entered a Scheduling Order setting forth the deadline for Plaintiff's witnesses as September 1, 2014.

3. Anticipating potential issues with Dr. Glen, the undersigned requested Dr. Glen's test data, notes and file materials in the hopes it might shed light on her methodology and the basis for Dr. Glen's opinions. The Defendants objected to producing such information to the Plaintiff.

4. This required the Court to intervene and order Dr. Glen to produce the raw data and file materials.

5. On October 28, 2014, Defendants produced Dr. Glen's October 7, 2014 report which concluded the Plaintiff was malingering. See Exhibit "A."

6. Page 4 of Dr. Glen's report describes 16 test measures Dr. Glen administered.

7. Dr. Glen concluded malingering based on "measures of performance validity." See Exhibit "A," page 4.

8. Dr. Glen's report fails to mention any test, scale or score she relies upon in reaching this conclusion.

9. Dr. Glen's report fails to identify any specific test results whatsoever, regardless of whether she relied upon them or not. Dr. Glen's report was so vague that it

violated published neuropsychological guidelines as more fully discussed in Plaintiff's Motion to Strike Defense Expert, Dr. Tannahill Glen filed on June 15, 2015.

10. As such, the undersigned had no way to determine whether Dr. Glen's administration and/or interpretation methodology were scientifically valid.

11. In order for Plaintiff's counsel to understand the basis of Dr. Glen's opinions, Dr. Glen's discovery deposition was scheduled for May 27, 2015.

12. The Defendants unilaterally cancelled the deposition the morning it was set to occur and filed a Motion for Protective Order demanding that Plaintiff's counsel be precluded from using her computer during Dr. Glen's deposition, precluding Plaintiff's counsel from having access to the internet and limiting the time in which Plaintiff's counsel could cross-examine Dr. Glen to less than that permitted by law.

13. The undersigned responded on June 1, 2015, with affidavits confirming that no attempt to resolve certain issues occurred as required by law and responding to the unsworn allegations contained in Defendants' Motion for Protective Order.

14. This Court denied that portion of Defendant's Motion for Protective Order and granted the request that Plaintiff's counsel, Ms. Dorothy Clay Sims, refrain from using her cell phone during the deposition, which Plaintiff's counsel consented to in its June 1, 2015 Response to Defendants' Motion for Protective Order.

15. Dr. Glen's deposition was finally taken on June 11, 2015, which was only 4 business days before the *Daubert* motions were due.

16. Dr. Glen's deposition revealed that some of her hand written notes produced in fact were not even specific to this case. See Exhibit "B," deposition of Dr. Tannahill Glen, June 11, 2015, Page 186, lines 6-8.

Case 3:13-cv-01457-TJC-JBT   Document 89   Filed 07/02/15   Page 5 of 9 PageID 1238

17. Dr. Glen's deposition confirmed the fact that instead of producing the entire test manuals that Dr. Glen relied upon, Dr. Glen only produced a few pages and altered the information she *did* provide pursuant to this Court's Order, such that it rendered portions of the documents illegible. See Exhibit "C," deposition of Dr. Tannahill Glen, June 11, 2015, p. 113, line 7-13. Due to the illegible copies produced by the Defendants and Dr. Glen, at her deposition, Dr. Glen was forced to read *her* copy versus the illegible copy produced to the Plaintiff to answer questions.

18. The material that was produced by Dr. Glen prior to her deposition offered no insight as to what data, tests, scores or information she relied upon to conclude the Plaintiff was malingering.

19. In fact, it was not until Dr. Glen's deposition that it was revealed that the partial manuals she produced were not in fact the manuals she was relying upon to support her methodology.

20. In spite of producing over 500 pages of test data, nothing in the materials shed any light whatsoever as to which scale, test or score Dr. Glen relied upon to support her opinions contained in her report. Prior to Dr. Glen's deposition, nothing in the materials indicated which manual or document Dr. Glen used to interpret the tests such that a *Daubert* challenge could be fashioned.

21. The Defendants claim the June 14, 2015 notice of Dr. Butcher's involvement is untimely. This is only 3 days after Dr. Glen's deposition which was the first occasion Plaintiff had any information as to the scores, tests and/or scales relied upon by Dr. Glen in forming her conclusion of malingering.

5

22. It was impossible to list a witness much less provide a report prior to that date because Dr. Glen's report was vague and did not list specific scores or tests supporting her opinions as to malingering such that Dr. Glen's methodology could be evaluated.

23. Without knowledge as to Dr. Glen's methods of interpreting the tests and which test manuals she relied upon or did not rely upon, it is impossible to retain and educate a *Daubert* expert as to the issues in question, much less know whether a *Daubert* challenge would be necessary.

24. Defendants further argue that because Plaintiff's attorney, Dorothy Clay Sims deposed Dr. Glen 7 years ago, Plaintiff should have anticipated retaining Dr. Butcher. That suggests the Plaintiff should have anticipated, in advance of Dr. Glen's testimony, which test she would use and which manual or article she would rely upon without any facts to support this conclusion. In other words, Defendants apparently claim Dr. Glen is so predictable that Plaintiff's counsel should know in advance of any testimony, what tests and scores Dr. Glen will rely upon in a different case with a different Plaintiff and different test scores. If that is the argument, then it lends even more credibility to the Plaintiff's Motion to Strike Defense Expert, Tannahill Glen, PhD.

## ARGUMENT AND MEMORANDUM OF LAW

Defendants refer to *Arble v State Farm Mut. Ins. Co.* 272 FRD 604, 606, (DNM 2011) to support their position to strike Dr. Butcher. Contrary to the claim that Dr. Butcher should be stricken because he was not timely listed, the *Arble* court permitted the expert witness to testify in spite of the fact that the Plaintiff's expert witness was not timely disclosed per the Scheduling Order and did not comply with Rule 26. The Court in *Arble* denied the Motion to Strike and permitted the witness to testify on the *Daubert* issues.

Defendants argue that Dr. Butcher is a rebuttal witness. Dr. Butcher is not a rebuttal witness and will not testify at trial. Dr. Butcher is solely being used for the purposes of *Daubert* and to identify the reasons Dr. Glen's opinions should be stricken. The Defendants further argue they have complied with all the deadlines set by this Court. This is also inaccurate, however, it is a subject of another Motion that will be filed by the Plaintiff and is not proper for discussion here.

The Defendants' arguments simply fail, not only because the case they rely upon supports the Plaintiff's position, but also the Defendants side-step the following:

A.  Due to the Defendants' and Dr. Glen's objections to producing Dr. Glen's file materials, Dr. Glen and the Defendants producing illegible copies of Dr. Glen's file material, and then the Defendants unilaterally cancelling Dr. Glen's discovery deposition, the undersigned had no information setting forth Dr. Glen's methodologies to discuss with an expert, until the date of Dr. Glen's deposition, which occurred 3 business days before *Daubert* motions were due. As set forth in the Plaintiff's Motion to Strike Defense Expert, Dr. Glen, a review of Dr. Glen's deposition reveals she ignored the results of test manuals published by the creators of the tests she gave and instead relied upon only an article. This could not have been predicted and was only revealed on the day of Dr. Glen's deposition.

B.  While Defendants' subject Motion contains unsworn allegations that, in a prior case, seven years ago, with Ms. Sims, she retained Dr. Butcher and " …Plaintiff here likely anticipated using Dr. Butcher to challenge Dr. Glen…" presupposes that Dr. Glen's testimony, use of scales, scores and methodology would be the same in both cases. In other words, Defendants imply that Dr. Glen would be so predictable to reach the same conclusions with different Plaintiffs, facts and tests scores. There is no way this could or

should have been predicted because to make that claim, Defendants are essentially admitting Dr. Glen's conclusions are the same regardless of the facts of a particular case.

Based upon the foregoing, this Honorable Court should deny the Defendants' Motion to Strike Dr. Butcher. As a matter of fairness, the Defendants should be entitled to retain their own *Daubert* expert, as long as it is not duplicative of what Dr. Glen may testify to, or the Defendants should be entitled to depose Dr. Butcher, if they so choose. However, should this Honorable Court be inclined to continue the trial date of this matter, the Plaintiff would respectfully request that the Plaintiff be permitted to call Dr. Butcher at the trial of this matter as the Defendants would then have sufficient time to conduct what discovery the Defendants wish to conduct with regard to this issue.

WHEREFORE, Plaintiff, ANTHONY HAIRSTON, respectfully requests this Honorable Court enter its Order denying Defendants' Amended Motion to Strike Plaintiff's Expert, James Butcher, Ph.D., and for any other relief deemed just and proper.

**LAW OFFICES OF ERIC S. BLOCK, PLLC**

*/s/ Eric S. Block*

**ERIC S. BLOCK**
Florida Bar No.: 0915531
**FRAZ AHMED**
Florida Bar No.: 0025653
6817 Southpoint Parkway, Ste. 2502
Jacksonville, Florida 32216
TEL.: (904) 475-9400
FAX: (904) 475-9411
Attorneys for Plaintiff
Primary email: eservice@ericblocklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via electronic delivery to **Ellis T. Fernandez, III, Esquire,** et@fernandeztl.com; emy@fernandeztl.com; Pleadings@Fernandeztl.com and **Sorena Fallin, Esquire,** Pleadings@Fernandeztl.com; Sorena@Fernandeztl.com at 8780 Perimeter Park Court, Bldg 200, Jacksonville, FL 32216, Counsel for Defendants; and **Christopher Johns, Esquire, Zachary Von Roenn, Esquire,** Johns & Von Roenn, 4901 Atlantic Blvd., Jacksonville, FL 32207, zvonroenn@chrisjohnslaw.com, cjjaxlaw@yahoo.com; Counsel for Plaintiff, for this 2nd day of July, 2015.

_____
Attorney