## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**ANTHONY HAIRSTON,**

     **Plaintiff,**

**v.**           **CASE NO: 3:13-CV-1457-J-32BT**

**ED NELSON TRANSPORT,**
**a Foreign Profit Corporation and**
**ED NELSON, Individually,**

     **Defendants.**

_____/

## PLAINTIFF'S AMENDED *DAUBERT* MOTION TO STRIKE THE TESTIMONY OF TARA MARCHAND

   Plaintiff, Anthony Hairston, by and through his undersigned counsel, moves this Honorable Court for an Order striking the testimony of Tara Marchand, a physical therapist, who performed two Functional Capacity Evaluations (FCEs) on the Plaintiff. The Defendants intend on calling Ms. Marchand as an expert witness, however, they have failed to comply with Rule 26(a)(2)(b)(ii), Federal Rules of Civil Procedure. Additionally, Ms. Marchand's testimony is inadmissible pursuant to Rule 702, Federal Rules of Evidence and *Daubert*. Further, Ms. Marchand's testimony consists of inappropriate comments on Plaintiff's credibility.

   Based upon the FCEs, Ms. Marchand concluded the Plaintiff demonstrated insufficient effort and inappropriate pain focus. Significantly, Ms. Marchand no longer has access to **any** of her handwritten notes that serve as the factual basis for her opinions. Ms. Marchand also no longer has access to the Plaintiff's answers and responses to questionnaires and diagrams that also serve as the factual basis for her expert opinions. This alone requires Ms. Marchand

1

to be prohibited from testifying.  Further, Ms. Marchand admitted she did not interpret the data which formed the basis of her opinions; she did not have medical records which could offer alternative explanations to that of "insufficient effort" or "inappropriate pain focus;" nor did she have the patient questionnaire which could also afford information to support alternative conclusions.  Because Ms. Marchand no longer has these critical documents and notes that form the basis of her opinions, the Plaintiff can cannot appropriately challenge the findings and opinions of Ms. Marchand or offer alternative explanations.

## STATEMENT OF FACTS

1. Tara Marchand prepared two Functional Capacity Evaluations (FCEs); one in 2012 (Exhibit A) and one in 2013 (Exhibit B).

2. Ms. Marchand's deposition was taken on May 26, 2015 (Exhibit C), June 10, 2015, (Exhibit D), June 11, 2015 (Exhibit E) and June 29, 2015 (Exhibit F).

3.  Ms. Marchand's FCEs indicate the Plaintiff did not give full effort and had an inappropriate pain focus.

4. Ms. Marchand is not an expert in FCEs as follows:

    a. While Ms. Marchand is a physical therapist, she is not a medical doctor or chiropractor.

    b. Ms. Marchand is not licensed to conduct a physical, write prescriptions, diagnose a disease or condition, or perform surgery.

    c. Ms. Marchand does not have access to Plaintiff's medical records.

    d. Ms. Marchand did not interpret the results of the tests.

**The Plaintiff is Unable to Challenge the Factual Basis Underlying Tara Marchand's Opinions as She No Longer Has Access to Her Notes, Questionnaires, Diagrams, and Other Documents that Form the Basis of Her Opinions**

5.      The FCEs produced by Ms. Marchand are not actually her own interpretation of the data. *See* Exhibit C, page 42, lines 17-20.

6.       The FCEs and Ms. Marchand's opinions contained within her reports were based upon Ms. Marchand's handwritten notes, various questionnaires, and documents which were input into a computer and the computer performed the analysis to reach the opinions contained in Ms. Marchand's reports.  *See* Exhibit C, page 11, line 6 to page 12, line 8.

7.      The FCEs were conducted 2 and 3 years ago. Ms. Marchand no longer has access to the notes after the company was sold. The notes may no longer exist. *See* Exhibit C, page 69, lines 17-23.

8.   Ms. Marchand was unable to personally recall her evaluation of the Plaintiff.  *See* Exhibit C, page 16, line 23 to page 17, line 8.

9.      Ms. Marchand did not have access to Plaintiff's medical records. *See* Exhibit C, page 12, lines 9-12; Exhibit E, page 118, lines 5-16.

10.      Ms. Marchand could not respond to the following critical questions about the original test data that formed the basis of her opinions:

   a) Ms. Marchand could not answer questions about Plaintiff's range of motion during the exam. *See* Exhibit E, page 106, line 22- page 107, line 5.

   b) Ms. Marchand could not answer questions about Plaintiff's heart rate during the exam. *See* Exhibit C, page 106, line 14-21.  This is significant because one of the validity scales in the FCE presumes if a patient's heart rate does not increase while

performing a task, the presumption is that the patient is not giving full effort.  In the first FCE, one of the reasons given for poor effort was Plaintiff's lack of an increased heart rate. *See* Exhibit A, page 3.   As indicated in the Defendant's retained neuropsychologist's report, the Plaintiff was on hypertensive medication making the goal of the medication to keep the heart rate from increasing.  If the Plaintiff was on such medication at the time of the first FCE, which would be in the handwritten notes, then this can explain the lack of increase in heart rate and is a more logical explanation than insufficient effort. Ms. Marchand admitted that if a person was taking anti-hypertensive medication, then the tests should not have been administered. *See* Exhibit E, page 92, lines 1-16.  Ms. Marchand conceded the medication would have been listed in her notes which she no longer has access to.   Ms. Marchand could not answer questions about beta blockers affecting Plaintiff's heart rate because that was only in the handwritten notes which were not produced. *Id*. *See also* Exhibit C, page 32, lines 1-6.  Therefore, the Plaintiff cannot challenge the validity of the test and whether the test was appropriately administered.

c) Ms. Marchand could not answer questions about Plaintiff's use of medications and whether those would impact the FCE testing. *See* Exhibit C, page 36, line 19 to page 37, line 4.

d) Ms. Marchand could not answer questions about test-retesting. *See* Exhibit C, page 39, line 10 to page 40, line 6.

e) Ms. Marchand could not answer questions about purported inappropriate behaviors related to pain. *See* Exhibit C, page 43, lines 10-17.

f) Ms. Marchand could not answer questions about the reported source of the pain. *See* Exhibit C, page 47, line 21 to page 48, line 12.

g) Ms. Marchand could not answer questions about which three out of five Wadell scores were inappropriately positive. *See* Exhibit C, page 54, lines 9-22.

11.     Additionally, the tests showing "insufficient effort" were not actually performed. *See* Exhibit E, page 104, line 12-16.

12.     Ms. Marchand's opinions that the Plaintiff was not giving full effort and/or evidencing excessive pain behavior are based upon the use of Waddell's signs, a Visual Analog Scale, McGill Pain Questionnaire, Ransford Pain Drawing, an Illness Questionnaire, and a Coefficient of Variance.  **Ms. Marchand does not have access to any of the underlying data because she no longer has access to her notes, any of the scales, questionnaires, or drawings.**

## Waddell's Signs

13.     Ms. Marchand admitted someone with the Plaintiff's condition would have a "significant spinal pathology." *See* Exhibit C, page l7, line 9-l7.  Thereafter, Ms. Marchand was questioned about Dr. Waddell's own book setting forth the limits of the test she administered.   Dr. Waddell states, "there are three situations which you cannot use the behavioral signs."  Dr. Waddell goes on to state, "you should ignore even multiple signs in these patients."  The first situation in Dr. Waddell's own book is, "patients with possible serious spinal pathology." *See*  Exhibit C, page 58, line l7-21.  Therefore, according to the creator of the test himself, it should never have been administered in the first place due to the Plaintiff's serious spinal pathology.  Dr. Waddell himself has indicated in his book that "non-organic

signs do not mean that the pain is not "real, psychological or faked." *See* Exhibit G, page 192, "The Back Pain Revolution."

14.     Additionally, Ms. Marchand testified she would expect less pain than what was reported on the Waddell Signs but she did not have Plaintiff's medical records which might account for his responses. *See* Exhibit C, page 56, lines 13-16.

15.     Additionally, Ms. Marchand admitted Waddell signs were "just for the lumbar patient" and this case involves objective findings and injuries to the cervical spine. *See* Exhibit E, page 98, lines 14-15.  Causation aside, it is undisputed in this case that the Plaintiff had cervical fusion surgery due to his medical condition.

16.     Just as significant, Ms. Marchand admitted she did not know which particular Waddell signs the Plaintiff exhibited because that information was no longer accessible. *See* Exhibit C, page 55, line 1-20.  Ms. Marchand did not know what the Plaintiff's Waddell's score is.  *See* Exhibit C page 54, line 9-21.  Because Ms. Marchand and the Defendants did not produce the underlying data and information, the Plaintiff has no ability to determine or challenge which Waddell's signs were inappropriately positive, whether there are alternative explanations, and whether they were scored correctly.  As a result, Ms. Marchand's testimony should be stricken.

**Visual Analog Scale**

17.     The Visual Analog Scale is a 10 centimeter line where the test taker's placement of the mark indicates their pain on a scale from 1-10. *See* Exhibit C, page 44, lines 8-15.  The rating has not been proven by a medical doctor to be illegitimate. There is no way to prove or disprove Plaintiff's pain. Without the handwritten notes, Plaintiff is unable to explore why the ranking is inappropriate or defend himself by having a medical doctor explain why the score is

appropriate.  Further, Ms. Marchand admitted the computerized summary would flag a score as inappropriate even if it could be explained by a legitimate medical condition. *See* Exhibit C Page 49, lines 7-14.

18.     Ms. Marchand admitted she did not have the "score" of the Visual Analog Scale because it was in her handwritten notes. *See* Exhibit C, page 49, lines 24-25.  Despite the lack of the actual score, it was deemed "inappropriate." *See* Exhibit A, page 43, lines 13-16.  Ms. Marchand did not provide an administration or interpretation manual.  Without the actual score and the administration or interpretation manual, the Plaintiff has no ability to challenge the validity of Ms. Marchand's opinion.  As a result, Ms. Marchand's testimony should be stricken.

## McGill Pain Questionnaire

19.     Ms. Marchand did not know the purpose of the McGill Pain Questionnaire. *See* Exhibit C, page 49, line 19-23.

20.     Ms. Marchand was unable to provide the handwritten notes regarding the McGill Pain Questionnaire. *See* Exhibit C, page 49, line 25-page 50, line 7.

21.     Ms. Marchand's summary only said it was "positive" because it was "above 30." *See* Exhibit C, page 50, lines 2-4.  A positive score only means a "high pain focus." *See* Exhibit C page 51, lines 7-10.

22.     The test itself is a series of boxes with adjectives in each. *See* "Pain Questionnaires," Exhibit H. The test taker is asked to circle one word in each box that best describes the pain, if any. *Id*. A "high pain focus" can be the result of a test taker circling words that accurately explain the pain caused by a documented medical condition. *See* Exhibit C, page 53, lines 5-23.

23.     Ms. Marchand did not know Plaintiff's score. *See* Exhibit C, page 49, line 24-25.  Ms. Marchand also did not know the scores on any pain measures because all her notes were unavailable. Without the handwritten notes and questionnaire, the Plaintiff has no ability to demonstrate why each circled adjective and the total score appropriately describes his pain. As a result, Ms. Marchand's testimony should be striken.

### Ransford Pain Drawing

24.     Ms. Marchand did not have a copy of the drawing with the markings made by the Plaintiff because it was only in the handwritten chart. *See* Exhibit C, page 43, line 22-25.  Ms. Marchand simply made assumptions about whether the results were appropriate based on her summary. *See* Exhibit C, page 44, lines 1-5.  As a result, without the actual handwritten notes and the drawing, the Plaintiff cannot appropriately challenge the validity of Ms. Marchand's opinions.  As a result, Ms. Marchand's testimony should be striken.

### Inappropriate Illness Questionnaire

25.     The test is designed to evaluate lumbar patients. *See* Exhibit C, page 64, lines 18-22. However, Plaintiff suffers from several cervical injuries. *See* Exhibit C, page 65, lines 12-16.

26.  The test is not designed to detect whether a test taker is faking pain. *See* Exhibit C, Page 64, line 6-8.

27.     Ms. Marchand is unable to testify about the origins of the test. *See* Exhibit C, Page 65, line 9-11.

28.     Ms. Marchand was unable to discuss whether the fear of re-injury during the test could impact the results and give a false reading of not full effort. *See* Exhibit C, page 71, line 16 – page 72, line 12.

29.     Because Ms. Marchand no longer has access to the questionnaire, the Plaintiff cannot appropriately challenge the validity of Ms. Marchand's opinions.  As a result, Ms. Marchand's testimony should be striken.

### Ms. Marchand Did Not Interpret that Data Herself

30.     Ms. Marchand's testimony is not her own analysis or conclusions. Ms. Marchand admitted she does not interpret the data. *See* Exhibit C, page 42, line 17. Evidence indicates, in fact, that most FCE administrators lack the necessary background to conduct the tests and rely on computerized interpretations of the raw data. "Functional and Work Capacity Evaluation Issues," *See* Exhibit I, page 3. Furthermore, as is the case here, "the process of FCEs draws upon the principles of biomechanics, ergonomics, kinesiology, physics, and physiology yet most test administrators, therapists, or providers have little or no education or background in these areas. They rely on computerized interpretation and not their own analysis of data to draw conclusions and opinions." *Id.*  Further, "the College of Forensic Sciences (CFS) has identified that most FCE administrators are not sufficiently grounded in science, case law and forensic issues."  *Id.* at 4.  This is clearly the situation here in that the Ms. Marchand was unable to identify independent articles and/or error rates to support her conclusions, nor was she even relying on her own interpretation of the data.  As a result, Ms. Marchand's testimony should be striken.

**<u>Coefficient of Variance ("CV")</u>**

31.     Ms. Marchand admitted she is not an expert on the CV in testing. *See* Exhibit C, page 25, lines 18-19.  The CV in testing is one reason Ms. Marchand claims poor effort on the part of the Plaintiff. *See* Exhibit A, page 3; Exhibit B, page 3.

32.     According to Ms. Marchand, the variance in performance of the same tasks should be less than 15%. *See* Exhibit C, Page 20, lines 1-6.; Exhibit E, page 94, line 21- page 95, line 4.

33.     However, the CV used in the tests conducted by Ms. Marchand may be affected by the following items documented in Plaintiff's medical records:

      A) Depression;
      B) Medication that slows down the central nervous system;
      C) Neck pain;
      D) Needing a 2 level spinal fusion;
      E) Pain in the lumbar spine; and/or
      F) Carpal tunnel syndrome.

34.     Ms. Marchand did not know if or how medications would affect tolerance. *See* Exhibit C, page 17, line 24 to page 18, line 2.  As a result, Ms. Marchand cannot know how medications affect CV.  Ms. Marchand admitted she has not read any studies on medications affecting the CV. *See* Exhibit C, page 26, lines 18-23. She later admitted pain medication taken during the FCE could affect performance after the medication takes effect. *See* Exhibit C, page 37, line 4 -page 39, line 9.

35.     This is one of the many fatal flaws to Ms. Marchand's methodologies because if an individual takes pain medications during an exercise, lifting for example, then subsequent lifting later in the day may be easier due to lack of pain and exceed the l5% variance. Alternatively, if the pain medication begins to wear off, the patient may not be able to engage in the same activity within l5% of the last activity secondary to pain.  Whether Ms. Marchand

opines the patient should be able to do so is irrelevant.  The science and underlying facts and data supporting these opinions must be produced and it was not.  As a result, Ms. Marchand's testimony should be striken.

### MEMORANDUM OF LAW

**I.   THE PLAINTIFF IS SEVERELY PREJUDICED BY BEING UNABLE TO CHALLENGE THE UNDERLYING FACTS AND DATA OR DISCOVER HOW MS. MARCHAND FORMED HER OPINIONS OR OFFER ALTERNATIVE EXPLANATIONS FOR THE TEST RESULTS**

An expert witness must disclose the facts or data considered in forming an opinion.[1] "Considered" means "taken into account."[2]  If the facts or data are not provided, the party is not allowed to use that information or witness as evidence.[3]  The party may only use the witness if they can show the failure to provide the facts or data is either substantially justified or harmless.[4]  Courts evaluate both the justification and harm based on the explanation for the failure to disclose, the importance of the information, and any prejudice caused by the failure to disclose when determining whether a violation of Rule 26(a)(2)(b)(ii) was substantially justified or harmless.[5]

The failure to disclose is not harmless when it prejudices a party.[6]  Prejudice occurs when the failure to disclose deprives a party a meaningful opportunity to perform discovery related to the documents or witnesses.[7]  The lack of access to **any** of Ms. Marchand's handwritten notes, diagrams, questionnaires, and underlying data has prevented the Plaintiff from

---

[1] F. R. Civ. P. 26(a)(2)(B)(ii); *In re Puig*, 398 B.R. 69 (Bkrcy S.D. Fla. 2008)
[2] *Puig*, 398 B.R. at 72.
[3] F. R. Civ. P. 37(c)(1).
[4] *Id*.
[5] *Romero v. Drummond Co. Inc*., 552 F.3d 1303, 1321 (11th Cir. 2008).
[6] *Berryman-Dages v. City of Gainesville*, 10-cv-177 (N.D. Fla, April 2, 2012).
[7] *Id*.

questioning the factual basis and the validity of Ms. Marchand's ultimate opinions and severely prejudices the Plaintiff.  The lack of production of these critical documents has also deprived the Plaintiff of providing an alternate explanation for the test results.

Ms. Marchand had no independent recollection of examining the Plaintiff and had to rely on her reports. *See* Exhibit C, page16 line 23-page 17 line 8.  The Plaintiff was unable to ask questions about potential inconsistencies between the handwritten notes and the computerized summary.  The Plaintiff was unable to conduct discovery into the factual basis of Ms. Marchand's conclusions regarding the Plaintiff's range of motion because those notes were not produced. *See* Exhibit C, page 6, line 20- page10, line 3.  The Plaintiff was unable to conduct discovery into the factual basis of Ms. Marchand's opinions regarding Plaintiff's heart rate because that information was only in the handwritten notes, which were not produced. *See* Exhibit C, page 31 line 18- page 32 line 13.   The Plaintiff was unable to meaningfully depose Ms. Marchand and conduct discovery into how the use of medications could have affected the FCE score because that information was in the handwritten notes, which were not produced. *See* Exhibit C, page 36 line 9- page 32 line 17.  The Plaintiff was unable to meaningfully depose Ms. Marchand regarding test-retesting because all of the documentation was in her handwritten notes, which were not produced. *See* Exhibit C, page 39 line 9-14. The Plaintiff was unable to determine the basis and meaningfully depose Ms. Marchand over the alleged "inappropriate pain behaviors" because the documentation of the inappropriate behaviors was only in the handwritten notes, which were not produced. *See* Exhibit C, page 43 lines 10-16.  The Plaintiff was unable to determine the factual basis and meaningfully depose Ms. Marchand over inconsistencies between the use of the Visual Analog Scale and Plaintiff's medical diagnosis

because Ms. Marchand was unable to recall the form and nature of Plaintiff's pain without the handwritten notes. *See* Exhibit C, page 47 line 20- page 48 line 12.  The Plaintiff was unable to determine the factual basis and meaningfully depose Ms. Marchand over the "more than three out of five" positive Waddell's signs because only the handwritten notes documented which signs were positive. *See* Exhibit C, page 54 lines 12-21.  The Plaintiff was unable to determine the factual basis and meaningfully depose Ms. Marchand about the use of heart rate testing that should not have been administered due to Plaintiff's prescribed beta blockers. *See* Exhibit E, page 90, line 18 – page 92, line 18.

Ms. Marchand relied wholly upon her handwritten notes, the diagrams, and questionnaires in forming her opinions.  Ms. Marchand's handwritten notes, diagrams, pain questionnaires, and underlying data is critical in this case to challenge the validity of Ms. Marchand's opinions or offer alternative explanations for the test results.  The handwritten notes, diagrams, pain questionnaires, and underlying data may very well be inconsistent with the computer generated summary contained with the actual reports.  Pursuant to the Federal Rules of Civil Procedure and federal case law, the Defendants and Ms. Marchand were required to produce these documents.  The Defendants and Ms. Marchand failed to produce **<u>any</u>** of the handwritten notes, diagrams, and pain questionnaires.   Since the handwritten notes, diagrams, and pain questionnaires formed the basis of the Ms. Marchand's opinions, were not produced to the Plaintiff, and the lack of production severely impacted the Plaintiff's ability to conduct discovery, Ms. Marchand should not be permitted to testify at trial.

## II.     MS. MARCHAND'S TESTIMONY INTRUDES ON THE JURY'S ROLE TO DETERMINE THE CREDIBILITY OF A WITNESS

Ms. Marchand alleges the Plaintiff complains of excessive pain.  However, Ms. Marchand has virtually no understanding as to the Plaintiff's medical conditions, which might account for the pain and, as a result, such testimony is profoundly prejudicial.

The same is true with any claim of "lack of effort" on the part of the Plaintiff.  It is patently unfair to accuse the Plaintiff of not trying hard enough when Ms. Marchand no longer has access to the factual basis of that conclusion nor has considered **other more likely alternatives such as medical conditions, medication, or deconditioning.**

An expert's testimony regarding the truthfulness or credibility of a witness is almost always inadmissible.[8] It is almost always inadmissible because it interferes with the jury's province to determine credibility.[9] Credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe, and the expert's "stamp of approval" on a particular witness' testimony may unduly influence the jury.[10]

Generalized testimony about underlying disorders under the guise of advising the jury to make its own determination about credibility is also inadmissible.[11] In *Falcon*, the Defendant hired a forensic psychologist to testify about the government's witness's "psychological, emotional, and interpersonal condition and functioning."[12] The forensic psychologist based his

---

8 *United States v. Hill*, 749 F.3d 1250, 1260-61 (10th Cir. 2014) (holding expert testimony about witness credibility inadmissible and citing cases with a similar holding in the 1st, 2nd,  4th, 7th, 8th, 9th, and 11th Circuits). *See also United States v. Wertis*, 505 F.2d 683, 685 (5th Cir. 1974).
9 *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996).
10 *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991)
11 *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245-46 (11th Cir. 2003).
12 *Id*. at 1242.

testimony on a review of records and observation of prior testimony.[13] However, the court found his testimony about the general effects of the alleged psychological disorders would not assist the jury in evaluating evidence or deciding the ultimate issue.[14] As a result, the psychologist's testimony was excluded.[15]

Ms. Marchand's testimony invades the province of the jury by commenting on Plaintiff's credibility.  Ms. Marchand claims the Plaintiff was not demonstrating "full effort." *See* Exhibit C, page 15, line 18 to page 19, line 5; page 71, lines 4-25; page 72, lines 7-12.   This implies that he can do better and chooses not to for whatever reason.  This conclusion is not born out by the science as set forth previously.

Ms. Marchand claims the Plaintiff is in an "inappropriate" amount of pain. *See* Exhibit C, page 54, lines 10-16; page 44, lines 6-15.  One of the tests she administered claims to screen for an "inappropriate" pain focus. *See* Exhibit C, page 63, line 13 to page 64, line 2. While Ms. Marchand claims she is not testifying the Plaintiff is malingering she is, however, taking the position he is not giving "full effort" which will result in the jury questioning the Plaintiff's intent and integrity. *See* Exhibit C, page 15 line 18 to page 19, line 5; page 71, lines 5-25, page 72, lines 7-12. This is profoundly prejudicial.  It is up to the jury to determine the amount of pain Plaintiff currently suffers from. The jury can evaluate the Plaintiff's medical records, his medical condition, his doctor's testimony, and judge his credibility about his pain when he testifies. Ms. Marchand's comments about Plaintiff's credibility are inappropriate and prohibited under federal law. This is particularly true when Ms. Marchand cannot testify as an

---

[13] *Id.*  at 1241-42.
[14] *Id*. at 1245.
[15] *Id*. at 1248.

expert as to the Plaintiff's medical diagnoses and exactly how much pain he should be in based upon his medical condition.  Not only is Ms. Marchand limited in her training, but she does not have any medical records to support the ability to distinguish between real medical conditions sufficient to cause the pain the Plaintiff indicated on the missing forms versus inappropriate pain complaints.  Further, any probative value would be substantially outweighed by its prejudicial effect pursuant to Rule 403, Federal Rules of Evidence.  As a result, Ms. Marchand should be precluded from testifying at trial.

## III.   MS.  MARCHAND'S TESTIMONY IS INADMISSIBLE UNDER RULE 702 AND *DAUBERT*

Rule 702 requires an expert's testimony to meet certain criteria in order for it to be admissible. The testimony must be helpful to the trier of fact.[16] The expert's testimony must be based on sufficient facts or data.[17] The expert's principles and methods must be reliable.[18] The expert must have reliably applied those principles and methods.[19]

The court must act as a gatekeeper and exclude unreliable expert testimony.[20]   In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the United States Supreme Court provided four factors to evaluate the reliability of an expert's testimony.[21] The four factors are:

"(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or

---

16 Fed. R. Ev. 702(a).
17 Fed. R. Ev.  702(b).
18 Fed. R. Ev.  702(c).
19 Fed. R. Ev.  702(d).
20 *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).
21 *See generally Id.*

potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community."[22]

The *Daubert* factors to assess the reliability of an expert's testimony must be applied on a case by case basis.[23] Failure to satisfy any of the factors relevant to a particular case renders the expert's testimony inadmissible.[24]

## A.   SINCE MS. MARCHAND DID NOT INTERPRET THE DATA SHE IS NOT QUALIFIED AS AN EXPERT

An expert witness must be qualified in order to testify.[25] An expert's qualification can be based on knowledge, experience, education, skill, or training.[26] The proponent of the expert's opinion must demonstrate the expert's qualification.[27]

Ms. Marchand is not a doctor, chiropractor, or nurse. She is not licensed to diagnose a medical condition or prescribe medical treatment or care. **Ms. Marchand never actually interpreted the data the Defendants propose to offer into evidence**. *See* Exhibit C, page 42, line 18-21. She is not an expert about the coefficient of variance, the main criteria in the FCE used to claim the Plaintiff was not performing with a full effort. *See* Exhibit C, page 15, lines 18-19; Exhibit A, page 3, Exhibit B, page 3. Ms. Marchand is not an expert on how medications could affect performance on the validity tests or the coefficient of variance. *See* Exhibit C, page 17, line 24-page 18, line 2; Exhibit C, page 26, lines 18- 23; Exhibit C, page 37, line 4-

---

22 *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004), quoting *Quiet Technology DC-18 v. Hurel-Dubois Uk LTD*, 326 F.3d 1333, 1341 (11th Cir. 2003).
23 *Id*. at 150.
24 *Chapman v. Procter & Gamble Distributing LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014), citing *Daubert* at 593-94
25 Fed. R. Ev. 702(a).
26 *Id*; *Frazier*, 387 F.3d at 1260-61.
27 *Frazier*, 387 F.3d at 1260.

page 39, line 9.  Ms. Marchand lacks essential information about the tests that were given to the Plaintiff. *See* Exhibit C, page 13, lines 6-18; Exhibit C, page 65, line 10; Exhibit C, page 49, lines 20-25.  Since Ms. Marchand is not qualified as an expert, she should be precluded from testifying at trial.

## B.  MS. MARCHAND'S TESTIMONY IS UNRELIABLE BECAUSE IT HAS NOT BEEN SUBJECTED TO PEER REVIEW

The lack of peer review of an expert's opinion or failing to utilize peer reviewed sources can render an expert's testimony inadmissible.[28] Peer reviewed and published science is usually better science because it provides additional opportunities for the methodology to be reviewed and criticized.[29] Peer review also means the science and methodology has been generally accepted by the scientific community.[30] While peer review focuses on an expert's methodology, it can also be used to evaluate the expert's conclusions.[31]

Ms. Marchand neglected to use peer reviewed articles in her testimony. She did not rely on any peer reviewed articles to defend using the same coefficient of variance formula on a severely injured test taker. *See* Exhibit C, page 24, line 5-page 26, line 6. Ms. Marchand did not rely on any peer reviewed articles when she applied the same coefficient of variance to strength tests involving takers who had previously undergone cervical fusions. *See* Exhibit C, page 28, line 24-page 26, line 6; Page 34, line 23-Page 35, line 12. She did not rely on any peer reviewed articles discussing a fear of re-injury or aggravating an injury. *See* Exhibit C, page 72, lines 1-7.  Ms. Marchand did not rely on any peer reviewed articles discussing paraspinal

---

28 *Wilson v. Taser International, Inc.*, 08-13810 p. 12-13 (11th Cir. Dec. 16, 2008).
29 *Id*.
30 *Id*.
31 *Id*. at 1315-16.

tightness and the coefficient of variance. *See* Exhibit C, Page 73, lines 9-25. Ms. Marchand failed to utilize peer reviewed sources when forming her opinions. Because Ms. Marchand failed to rely on peer reviewed sources when evaluating the Plaintiff and forming her opinions, Ms. Marchand should be precluded from testifying at trial.

## C.     MS. MARCHAND'S TESTIMONY IS UNRELIABLE BECAUSE IT HAS AN UNKNOWN ERROR RATE

An unknown error rate can lead to the inadmissibility of an expert's testimony. The lack of a known error rate implicates other flaws with either validity or reliability.[32] An expert must perform steps to calculate an error rate if it is possible.[33]

Ms. Marchand was unable to provide an error rate for the tests administered during the FCEs. *See* Exhibit E, page 16 line 19 to page 17, line 11. The test manuals do not contain an error rate. *Id.* There are no published peer reviewed articles discussing the error rate. *Id.* Ms. Marchand is unable to testify if or how beta blockers, pain medications, pre-existing cervical and lumbar conditions, acid reflux, carpal tunnel syndrome, fear of re-injury, or any combination of these conditions could create a false positive result for an inappropriate pain focus or a lack of effort. The lack of a known error rate shows the tests conducted by Ms. Marchand fail to properly account for alternate causes of a test taker's decreased performance. Because the potential error rate would impact Ms. Marchand's testimony about the Plaintiff's performance, her lack of knowledge about its error rate should preclude Ms. Marchand from testifying at trial.

---

[32] *See United States v. Evans*, 469 F. Supp. 2d 1112, 1114-15 (M.D. Fla. 2006).
[33] *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 740-41 (N.D.Ill. 2005)

### III.    CONCLUSION

Ms. Marchand and the Defendants did not produce any of the documents, handwritten notes, diagrams, or questionnaires that Ms. Marchand relied upon when forming her opinions. Additionally, Ms. Marchand did not interpret the material or satisfy the requirements set forth in *Daubert.*

Further, Ms. Marchand's testimony invades the jury's exclusive province of determining the credibility of a witness. Ms. Marchand is not qualified for the reasons set forth above and her testimony is unreliable because it has not been subjected to peer review and it has an unknown error rate.  Based upon all of the forgoing, the Plaintiff respectfully requests this Honorable Court preclude Ms. Marchand from testifying at trial.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court preclude Ms. Marchand from testifying at trial and any further relief this Honorable Court deems just and proper.

**LAW OFFICES OF ERIC S. BLOCK, P.A.**


**/s/ *Fraz Ahmed***
**ERIC S. BLOCK**
Florida Bar No.: 0915531
**FRAZ AHMED**
Florida Bar No.: 0025653
6817 Southpoint Parkway, Ste. 2502
Jacksonville, Florida 32216
TEL.: (904) 475-9400
FAX: (904) 475-9411
Attorneys for Plaintiff
Primary email: eservice@ericblocklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been furnished via electronic delivery, **Joseph T. Kissane, Esquire, Michelle L. Smith,** Esquire, Cole, Scott & Kissane, P.A., 4686 Sunbeam Road, Jacksonville, Florida 32257, Counsel for Defendants; and **Christopher Johns, Esquire,** Johns & Von Roenn, 4901 Atlantic Blvd., Jacksonville, FL 32207, zvonroenn@chrisjohnslaw.com, cjjaxlaw@yahoo.com; Counsel for Plaintiff, for this 29TH day of January, 2016.


<u>*/s/ Fraz Ahmed*                          </u>
Attorney